# EXHIBIT F2

# Center for Biological Diversity, 195 IBLA 298 (2020)




CENTER FOR BIOLOGICAL DIVERSITY

195 IBLA 298                Decided July 9, 2020



United States Department of the Interior
Office of Hearings and Appeals
Interior Board of Land Appeals
801 N. Quincy St., Suite 300
Arlington, VA 22203

703-235-3750                           703-235-8349 (fax)

CENTER FOR BIOLOGICAL DIVERSITY

IBLA 2020-37                                               Decided July 9, 2020

Appeal and petition to stay the effect of nine decisions dismissing requests for State Director Review of Bureau of Land Management decisions approving applications for permits to drill oil and gas wells in Kern County, California. SDR LLCA-921-19-02, *et al.*

Motion to dismiss denied; decisions SDR LLCA-921-19-02 through SDR LLCA-921-19-08 affirmed; decisions SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B affirmed, as modified; motion to decouple appeals denied as moot; petition for stay denied as moot.

APPEARANCES: Wendy Park, Esq., Clare Lakewood, Esq., Oakland, California, for the Center for Biological Diversity; Nancy C. Zahedi, Esq., Office of the Regional Solicitor, U.S. Department of the Interior, Sacramento, California, for the Bureau of Land Management.

OPINION BY ADMINISTRATIVE JUDGE SOSIN

The Center for Biological Diversity (CBD) appeals and seeks a stay of the effect of nine separate decisions issued by the Deputy State Director for the California State Office of the Bureau of Land Management (BLM). In those decisions, BLM dismissed CBD's requests for State Director Review (SDR) of decisions by BLM's Bakersfield Field Office to approve multiple applications for permits to drill (APDs) oil and gas wells.

BLM filed an opposition to CBD's stay petition. BLM also filed a Motion to Dismiss for Lack of Standing, a Motion for Summary Judgment on Timeliness of SDR Requests, and a Motion to Decouple Appeal Into Nine Separate Appeals in the event the Board denies BLM's motion for summary judgment. On December 31, 2019, we issued an Order holding CBD's petition for stay in abeyance until we could resolve BLM's motion to dismiss.

195 IBLA 298

IBLA 2020-37

As explained below, in this Decision, we deny BLM's motion to dismiss, affirm decisions SDR LLCA-921-19-02 through SDR LLCA-921-19-08, and affirm as modified decisions SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B. We also deny BLM's motion to decouple the appeals and deny CBD's petition for stay as moot.

BACKGROUND

*BLM Decisions Approving APDs*

The decisions on appeal concern nine separate projects approving a total of 144 applications for permits to drill wells that were submitted to BLM by 5 different oil and gas operators on 8 different Federal oil and gas leases in Kern County, California.[1] While the dates of each step in BLM's decision-making process for each of the nine projects are different, the chronology of events is generally the same.

BLM posted information on the 144 APDs on its e-Planning/NEPA Register website and, for many of the APDs, also posted information in the lobby of BLM's Bakersfield Field Office. Under BLM's regulations governing APDs, this "posting initiated a 30-day public notice and public scoping process."[2] CBD submitted comments on 16 of the APDs that were ultimately approved and the subject of BLM's decision in SDR LLCA-921-19-09, and contacted BLM to request information on the APDs ultimately approved and the subject of BLM's decision in SDR LLCA-921-19-10-B.[3] BLM prepared seven environmental assessments (EAs) under the National Environmental Policy Act (NEPA) and two determinations of NEPA adequacy (DNAs) to analyze the potential impacts of approving the APDs.[4]

---

[1] BLM Motion to Dismiss for Lack of Standing; Opposition to Petition for Stay at 2 (filed Dec. 26, 2019) (Motion to Dismiss).

[2] *Id.* at 6; 43 C.F.R. § 3162.3-1(g) (requiring BLM to post APDs for public inspection at least 30 days before approving the APD). All citations to the U.S. Code of Federal Regulations are to the current edition, unless otherwise noted.

[3] Motion to Dismiss at 24; Appellant's Opposition to Motion for Summary Judgment at 7 (filed Feb. 3, 2020) (Opp. to Summary Judgment) (citing Declaration of Wendy Parks in Support of Appeal and Petition for Stay ¶¶ 17, 23-25 (Nov. 23, 2019)).

[4] *See* Administrative Record (AR), E&B Natural Resources Management Corporation (7 APDs), DOI-BLM-CA-C060-2019-0053-EA (Programmatic Project #58); Berry Petroleum Company, Midway Sunset (26 APDs), DOI-BLM-CA-C060-2019-0077-DNA; E&B Natural Resources Management Corporation, Claflin (11 APDs), DOI-BLM-CA-C060-2019-0078-EA (Programmatic Project #60); California Resources Elk Hills, Buena Vista, (1 APD), DOI-BLM-CA-060-2019-0075-EA (Programmatic Project #64); California

IBLA 2020-37

Based on these EAs and DNAs, BLM approved the APDs in nine separate decision records (DRs), and then updated its onshore oil and gas database known as the Automated Fluid Minerals Support System 2 (AFMSS 2 database) to notify the APD applicants that those APDs had been approved.[5] BLM later posted the DRs, EAs, and DNAs to its e-Planning/NEPA Register website.

After receiving notice of the DRs through an e-mail from BLM or through BLM's e-Planning/NEPA Register website, CBD submitted requests for SDR of each of the nine decisions under 43 C.F.R. § 3165.3, which provides that "[a]ny adversely affected party" may request SDR "within 20 business days of the date such . . . decision was received or considered to have been received."[6]

Below is a summary of the relevant dates for each decision.[7]

| SDR Decision | Project Name | Date of DR | Date BLM posted APD approval on AFMSS | Date CBD received DR |
|---|---|---|---|---|
| SDR LLCA-921-19-02 | E&B Poso Creek (7 APDs) | 3/27/2019 | 4/01/2019 | 8/12/2019 |
| SDR LLCA-921-19-03 | Berry Petroleum Midway Sunset (26 APDs) | 3/26/2019 | 03/27–4/01/2019 | 8/12/2019 |
| SDR LLCA-921-19-04 | E&B Poso Claflin (11 APDs) | 3/27/2019 | 03/28–4/03/2019 | 8/12/2019 |

---

Resources Production Corp., Mount Poso (1 APD), DOI-BLM-CA-C060-2019-0125-EA (Programmatic Project #71); Macpherson Oil Company, Round Mountain (1 APD), DOI-BLM-CA-C060-2019-0127-EA; E&B Natural Resources Management Corporation, Grimes (47 APDs), DOI-BLM-CA-C060-2019-0124-EA (Programmatic Project #73 and #01); Berry Petroleum, Midway Sunset/Southwestern (38 APDs), DOI-BLM-CA-060-2019-0093-EA; Seneca Resources Corporation, Midway Sunset (12 APDs) DOI-BLM-CA-C060-2019-0133-DNA.

[5] *See* BLM's Automated Fluid Minerals Support System 2, https://reports.blm.gov/reports/AFMSS (last visited July 9, 2020); Motion to Dismiss at 6 (explaining that posting on AFMSS, "in conjunction with the physical posting in the BLM field office, constitutes the formal notification of oil and gas decisions").

[6] 43 C.F.R. § 3165.3(b).

[7] *See* AR, Doc. 2019_12_06_Approved Federal APDsv4 Public View + Additional Information; BLM Motion to Dismiss at 5-22; BLM Motion for Summary Judgment on Timeliness of SDR Requests, or Motion to Decouple Appeal into Nine Separate Appeals at 6-21 (filed Dec. 26, 2019) (Motion for Summary Judgment); Opp. to Summary Judgment at 8-9; CBD Notice of Appeal and Petition for Stay at 2-3 (filed Nov. 25, 2019).

195 IBLA 300

| SDR Decision | Project Name | Date of DR | Date BLM posted APD approval on AFMSS | Date CBD received DR |
|---|---|---|---|---|
| SDR LLCA-921-19-05 | CREH Buena Vista (1 APD) | 5/09/2019 | 5/09/2019 | 8/12/2019 |
| SDR LLCA-921-19-06 | CRP Mt. Poso (1 APD) | 7/17/2019 | 7/17/2019 | 8/12/2019 |
| SDR LLCA-921-19-07 | MacPherson Round Mountain (1 APD) | 7/09/2019 | 7/17/2019 | 8/12/2019 |
| SDR LLCA-921-19-08 | E&B Grimes (47 APDs) | 7/23/2019 | 8/02–8/14/2019 | 8/27/2019 |
| SDR LLCA-921-19-09 | Berry Midway Sunset SW (38 APDs) | 7/08/2019 | 7/08/2019 | 9/11/2019 |
| SDR LLCA-921-19-10-B | Seneca Midway Sunset (12 APDs) | 8/01/2019 | 8/28–9/4/2019 | 8/30/2019 |

*There are some minor discrepancies in BLM's filings with respect to the dates BLM posted the APDs on its e-Planning/NEPA Register website. The dates above appear in BLM's Motion to Dismiss at 5-22.

*BLM's Decisions Dismissing CBD's Requests for SDR, and CBD's Appeals*

BLM issued the decisions now on appeal between October 21 and November 6, 2019, dismissing CBD's requests for SDR. BLM dismissed CBD's request for SDR of seven of the nine decisions (in SDR LLCA-921-19-02 through SDR LLCA-921-19-08), finding that CBD lacked standing to seek SDR because it was not a party entitled to seek SDR, and because CBD submitted its requests more than 20 days after the date BLM posted its approval of the APDs. BLM dismissed CBD's requests for SDR of the remaining two decisions (in SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B), finding that, although CBD was eligible to seek SDR because it participated in the decision-making process, its requests for SDR were untimely because it submitted them more than 20 days after the date BLM posted its approval of the APDs.

CBD timely appealed each of the nine decisions to the Board, requesting a stay of the effect of the decisions. CBD's initial notice of appeal and stay petition included only a copy of the SDR decision serialized as SDR LLCA-21-19-02. We docketed the appeal as IBLA 2020-37. CBD later supplemented its notice of appeal and stay petition with eight additional SDR decisions serialized as SDR LLCA-921-19-03 through SDR LLCA-921-19-09, and SDR LLCA-921-19-10-B, which we also assigned the IBLA 2020-37 docket number.

## WE DENY BLM'S MOTION TO DISMISS FOR LACK OF STANDING

We first address BLM's motion to dismiss all nine appeals for lack of standing to appeal to the Board. To have standing to appeal to this Board, an appellant must demonstrate that it is both a "party to a case" and "adversely affected" by the decision being appealed.[8] It is the responsibility of the appellant to demonstrate both regulatory elements of standing, and if either element is lacking, the Board must dismiss the appeal for lack of jurisdiction.[9]

A "party to a case" is

> one who has taken action that is the subject of the decision on appeal, is the object of that decision, or has otherwise participated in the process leading to the decision under appeal, e.g., . . . by commenting on an environmental document, or by filing a protest to a proposed action.[10]

The adverse effect criterion is met when an appellant shows that it has a legally cognizable interest, and the decision on appeal has caused or is substantially likely to cause injury to that interest.[11] A legally cognizable interest can include cultural, recreational, or aesthetic use and enjoyment of the affected public lands.[12] But a mere interest in a problem or concern with the issues involved is not sufficient to establish standing.[13] Rather, to demonstrate an adverse effect, an appellant must make colorable allegations, supported by specific facts set forth in an affidavit, declaration or other statement, that establish a causal relationship between the approved action and alleged injury to a legally cognizable interest.[14] An appellant need not prove that an injury is

---

[8] 43 C.F.R. § 4.410(a).
[9] *WildLands Defense*, 192 IBLA 209, 214 (2018); *Western Watersheds Project (WWP)*, 192 IBLA 72, 76 (2017).
[10] 43 C.F.R. § 4.410(b); *see Native Ecosystems Council*, 185 IBLA 268, 273 (2015) (holding that the appellant satisfied the "party to a case" requirement because it commented on a draft NEPA document).
[11] 43 C.F.R. § 4.410(d).
[12] *WildLands Defense*, 192 IBLA at 214; *WWP*, 192 IBLA at 77.
[13] *WildLands Defense*, 192 IBLA at 214; *WWP*, 192 IBLA at 77.
[14] *Ojo Encino Chapter*, 192 IBLA 269, 273 (2018); *WildLands Defense*, 192 IBLA at 214.

IBLA 2020-37

certain, but it must show that the threat of injury and its effect on the appellant is more than hypothetical.[15]

In support of its appeal and its assertion that it has standing, CBD primarily relies on several declarations by Ileene Anderson, CBD's Public Lands Desert Director and senior scientist. In her declarations, Ms. Anderson asserts that she has an interest in studying various wildlife species that will be impacted by BLM's decisions approving the APDs.[16]

BLM argues that CBD lacks standing to appeal decisions SDR LLCA-921-19-02 through SDR LLCA-921-19-08 because CBD does not satisfy the party to a case requirement. BLM states that CBD did not file any comments or otherwise contact BLM during the 30-day public notice period for the APDs.[17] BLM further states that CBD's only participation in these decisions was its request for SDR, and it "cannot then use the SDR process to become a 'party to a case.'"[18]

For decisions SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B, BLM argues that, although CBD satisfies the party-to-a-case requirement, it lacks standing because it is not adversely affected by BLM's approval of the APDs that were the subject of these two decisions. BLM argues that Ms. Anderson's statements are insufficient to demonstrate that she has a legally cognizable interest that is substantially likely to be injured by these projects. BLM states that Ms. Anderson provides only "vague descriptions" of the project areas, claims "generally" that she studies wildlife species within those areas, and "fails to

---

[15] *Ojo Encino Chapter*, 192 IBLA at 273; *see Legal and Safety Employer Research Inc.*, 154 IBLA 167, 172 (2001) ("Standing will only be recognized where the threat of injury is real and immediate.").

[16] *See, e.g.*, Declaration of Ileene Anderson in Support of Appeal and Petition for Stay at ¶ 19 (Nov. 19, 2019) ("I am very concerned that the development of these Projects will directly damage the remaining crucial habitat for the rare species I care deeply about, and diminish their home ranges and connectivity with other habitat and reduce my ability to view these species in their native habitats . . . ."); Supplemental Declaration of Ileene Anderson at ¶ 6 (Dec. 19, 2019) (stating that the "Poso Creek/Desert Glow Project and other neighboring projects, such as 47 Grimes" will "harm [her] ability to view [] species, especially the endangered San Joaquin kit fox," due to "air pollution, truck traffic, noise, habitat destruction, and wildlife fatalities."); Second Supplemental Declaration of Ileene Anderson (Jan. 30, 2020) (describing impacts of each of the nine projects on wildlife and her interests in wildlife).

[17] Motion to Dismiss at 23.

[18] *Id.*

demonstrate that she has been or will ever be at closest within ¾ of a mile, if not many miles distance from the APD projects."[19]

BLM and CBD focus their arguments on whether CBD is a party that is adversely affected by BLM's decisions to approve the APDs. But the decisions on appeal to the Board are the Deputy State Director's decisions dismissing CBD's requests for SDR. Therefore, the relevant inquiry is not whether CBD had standing to seek SDR before the Deputy State Director—i.e., whether CBD was a party to, and adversely affected by, BLM's approval of the APDs, under 43 C.F.R. § 3165.3. Rather, the relevant inquiry is whether CBD was a party to, and adversely affected by, the decisions dismissing its requests for SDR. The Board has held that in this circumstance, CBD satisfies the standing requirements in 43 C.F.R. § 4.410 because it was the named party in the decisions on appeal and was adversely affected by the Deputy State Director's decisions not to adjudicate its requests for SDR of BLM's decisions.[20]

We therefore find that CBD has standing to appeal the Deputy State Director's decisions to the Board and need not further address the parties' standing arguments. Because we find that CBD has standing, we deny BLM's motion to dismiss the appeals.

WE AFFIRM THE DEPUTY STATE DIRECTOR'S DECISIONS

Because CBD has standing before the Board, we next turn to the merits of BLM's decisions denying CBD's requests for SDR. The parties argue the merits of the SDR decisions through BLM's motion for summary judgment and CBD's opposition to that motion. We construe the parties' pleadings regarding the motion for summary judgment as encompassing CBD's statement of reasons and BLM's answer to the statement of reasons, and we considered them in adjudicating the merits of this appeal.

*Because CBD did not Participate in Seven of the Decisions on Appeal,*
*it was not a Party Eligible to Seek State Director Review of Those Decisions*

The SDR regulation permitting review of APDs specifies that only "a party adversely affected" by a decision may request SDR. Although the SDR regulation does not define "party," the Board has applied the definition of "party" found in its standing

---

[19] *Id.* at 27; *see id.* ("While Ms. Anderson may use the general area for scientific and personal reasons, she provides no specificity related to her past, current, or future use of lands that are likely to be affected by the nine projects that are the object of the present appeal.").
[20] *Southern Utah Wilderness Alliance,* 190 IBLA 152, 157 (2017).

IBLA 2020-37

regulation, 43 C.F.R. § 4.410, which provides that an appellant satisfies the party requirement by participating in the process leading to the decision on appeal.[21]

In decisions SDR LLCA-921-19-02 through SDR LLCA-921-19-08, BLM dismissed CBD's requests for SDR for lack of standing and timeliness. With respect to standing, BLM stated in each of those decisions that because CBD did not participate in any of the decision-making processes leading up to the approval of the APDs, it was not a party entitled to seek SDR under 43 C.F.R. § 3165.3(b).[22] We agree and affirm those decisions.

CBD does not argue that it participated in the APD decisions in SDR LLCA-921-19-02 through SDR LLCA-921-19-08; instead, CBD argues that it was prevented from participating because BLM did not comply with public participation requirements. In considering this argument, we first examine the public participation requirements for BLM's approval of APDs and the public participation opportunities BLM provided before it approved the APDs in SDR LLCA-921-19-02 through SDR LLCA-921-19-08. We then determine whether CBD availed itself of those public participation opportunities in a manner sufficient to confer party status.

1. BLM Complied with Public Participation Requirements

BLM is obligated by its regulations governing APDs to post information about the APDs at least 30 days prior to taking action on them.[23] The regulation at 43 C.F.R. § 3162.3-1(g) specifies that BLM must disclose the company or operator name, the well name and number, the well location, and any substantial modifications to the lease terms. BLM complied with this requirement by posting the relevant information about the APDs on its e-Planning/NEPA Register website, and CBD does not argue that BLM failed to do so.

---

[21] *See Citizens of Huerfano County*, 190 IBLA 253, 260, 261-62 (2017).
[22] BLM California State Office Decision, SDR No. LLCA-921-19-02 at 3 (Oct. 21, 2019); BLM California State Office Decision, SDR No. LLCA-921-19-03 at 3 (Oct. 21, 2019); BLM California State Office Decision, SDR No. LLCA-921-19-04 at 3 (Oct. 21, 2019); BLM California State Office Decision, SDR No. LLCA-921-19-05 at 3 (Oct. 21, 2019); BLM California State Office Decision, SDR No. LLCA-921-19-06 at 3 (Oct. 21, 2019); BLM California State Office Decision, SDR No. LLCA-921-19-07 at 3 (Oct. 21, 2019); BLM California State Office Decision, SDR No. LLCA-921-19-08 at 3 (Oct. 24, 2019).
[23] 43 C.F.R. § 3162.3-1(g); Onshore Oil and Gas Operations: Federal and Indian Oil and Gas Leases; Onshore Oil and Gas Order Number 1, Approval of Operations at III.E.1 (Jan. 10, 2017).

CBD instead alleges that BLM failed to comply with NEPA's public participation requirements and, as a result, did not provide it with a sufficient opportunity to participate in the decision-making processes for the APDs.[24]

Specifically, CBD argues that BLM's public notices violated NEPA's requirement to "[s]olicit appropriate information from the public."[25] CBD states: "BLM merely posted the cover sheets for each APD . . . without expressly soliciting public comment or informing the public of the opportunity to review the draft EA—or even informing the public an EA would be prepared."[26] CBD further asserts that BLM's notices did not fulfill the agency's duty to involve the public "to the extent practicable" when preparing an EA.[27] CBD states that "[i]t hardly poses an impracticable burden on BLM to expressly solicit comments on ePlanning when it is already posting information about each project on the website."[28] According to CBD, these failures are not remedied by BLM's compliance with the requirement to post information about proposed APDs under 43 C.F.R. § 3162.3-1(g):

> BLM's purported compliance with 43 C.F.R. § 3162.3-1(g)'s requirement to post information about proposed APDs . . . and with Onshore Oil and Gas Order Number 1's requirement for BLM to post APDs on AFMSS 2, does not obviate its duty to comply with these additional public notice and public involvement requirements under NEPA.[29]

BLM argues that it complied with NEPA's requirements for public involvement. BLM agrees that NEPA requires it to involve the public, "to the extent practicable," and states that in the case of APDs, this requirement is met by "involving the public through the 30-day public notice period set out at 43 C.F.R. § 3162.3-1(g)."[30] BLM explains that because its regulations require that it take action on an APD no later than 5 working days after the conclusion of the 30-day notice period, "BLM must essentially prepare any necessary NEPA documentation during the 30-day public notice period, as there is no opportunity under the oil and gas regulations to impose an additional public comment

---

[24] Opp. to Summary Judgment at 20.
[25] *Id.* at 21 (citing 40 C.F.R. § 1506.6(d)).
[26] *Id.* at 22.
[27] *Id.* at 25 (citing 40 C.F.R. § 1501.4(b)).
[28] *Id.*; *see id.* at 26 (stating that BLM failed to "provide a complete description of the project[s] to enable meaningful participation in the scoping process").
[29] *Id.* at 22; *see id.* at 23 ("[T]he 30-day notice period for APDs is distinct from scoping under NEPA.").
[30] Motion for Summary Judgment at 32.

period for draft EAs."[31] BLM further states that there is no requirement under NEPA to make EAs available for public comment.[32]

We conclude that BLM complied with NEPA's requirements for public participation. While CBD is correct that BLM's obligation to publish information about proposed APDs under its onshore oil and gas regulations is not a substitute for compliance with NEPA's requirements regarding public involvement, nothing precludes BLM from relying on these notices to satisfy NEPA.[33] In this case, BLM posted information about the APDs on its e-Planning/NEPA Register website, which "allows online review and comment of BLM planning and implementation projects."[34] The website enables searches by geographic location, project resource type, and project year, among other things, and identifies BLM employees who can be contacted with questions for each project. CBD asserts that BLM's posting was insufficient under NEPA because BLM did not specify that it was preparing environmental documents under NEPA to analyze the environmental effects of approving the APDs or that it was specifically seeking public input.[35] But we disagree that in this case NEPA required more.

Under the Department's regulations implementing NEPA, agencies are required to provide, "to the extent practicable," for "public notification and public involvement when an environmental assessment is being prepared."[36] The regulation further provides that the methods for fulfilling this requirement "are at the discretion of the Responsible Official,"[37] and that neither scoping nor public comment is required for an EA.[38] Here, we find that BLM satisfied its NEPA obligation. BLM alerted the public on its e-Planning/NEPA Register website that the APDs had been submitted for approval. BLM's website identifies projects posted on that website as projects subject to the NEPA process and explains that projects are posted to "allow[] online review and comment."[39] We think

---

[31] *Id.* (citing 43 C.F.R. § 3162.3-1(h)).

[32] *Id.* at 33-34.

[33] *See* 43 C.F.R. § 46.305(a) (specifying that bureaus must provide for public notification and involvement when an EA is being prepared, "to the extent practicable," but the methods for doing so "are at the discretion of the Responsible Official").

[34] https://eplanning.blm.gov/eplanning-ui/home (home page for the BLM National NEPA Register website) (last visited July 9, 2020).

[35] *See* Opp. to Summary Judgment at 6-7.

[36] 43 C.F.R. § 46.305(a).

[37] *Id.*

[38] *Id.* §§ 46.235(a), 46.305(a)(2), (b).

[39] *See, e.g.*, Decision Record, E&B Natural Resources Management Corporation, Claflin, 11 Applications for Permit to Drill, DOI-BLM-CA-C060-2019-0078-EA (Programmatic

195 IBLA 307

imposing a requirement that BLM specify for each posting that BLM will undertake NEPA and will seek public input is unnecessary and goes beyond what NEPA requires for an EA.[40] Moreover, here, CBD submitted comments on some of the APDs, which shows that CBD understood that by posting information to its website on the APDs, BLM was providing notice of those APDs and allowing public input.

CBD also complains that the information BLM posted about the proposed APDs was insufficient under NEPA.[41] But as we note above, the Department's NEPA regulations specify that scoping for EAs is optional; further, when agencies provide scoping for an EA, NEPA does not require detailed information in the scoping notice.[42]

Based on the facts in this appeal, we conclude that CBD has not shown that BLM violated any public participation requirements in its decision-making for the APDs.

### 2. CBD Did Not Participate in BLM's Decisions

CBD does not allege that it submitted comments on the APDs or on environmental analyses related to these seven decisions. Rather, CBD alleges that under NEPA it was "entitled to constructive receipt" of each DR and its associated NEPA documents.[43] In support of this assertion, CBD cites to 40 C.F.R. § 1506.6(b), which requires agencies to provide public notice of "NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected." As we have already held, however, BLM complied with this requirement by posting information on the APDs, and later its NEPA documents and DR, on its e-Planning/NEPA Register website. There is no requirement in NEPA that agencies

---

Project #60) at 2 (explaining that BLM posted copies of each APD "in the front lobby of the Bakersfield Field Office for a 30-day period," and listed the project "on the California BLM NEPA web list in February 27, 2019 to notify the public of this project and invite comments from those interested").

[40] *See Dine Citizens Against Ruining Our Env't v. Jewell*, 312 F. Supp. 3d 1031, 1095 (D.N.M. 2018) ("[A]s long as the documents circulated give some notice to the public of the project's nature and effects, the agency meets the public notice requirement" under NEPA) (*aff'd in part and reversed in part on other grounds*, 923 F. 3d 821 (10th Cir. 2019)).

[41] Opp. to Summary Judgment at 22, 26-27.

[42] *See* 40 C.F.R. §§ 1501.7 (Scoping), 1506.6 (Public involvement); 43 C.F.R. § 46.235 (NEPA scoping process).

[43] Opp. to Summary Judgment at 13.

IBLA 2020-37

specifically notify individuals who have not participated in the decision-making process of NEPA analyses or decisions based on those analyses.

Moreover, given that BLM posted information about the APDs at issue on the e-Planning/NEPA Register website, and did not approve the APDs until after the public notification period ended, CBD had a window to comment on the proposed APDs (or request that it be informed about the APD decisions) before BLM approved them. In fact, CBD contacted BLM about APDs at issue in the Deputy State Director's decisions serialized as SDR LLCA-21-19-09 and SDR LLCA-21-19-10-B.[44] These facts demonstrate that CBD could have participated in the decision-making process for the remaining APDs but did not do so.

Because CBD did not comment or otherwise seek to participate in the decision-making process for the APDs subject to these seven decisions, we affirm decisions SDR LLCA-921-19-02 through SDR LLCA-921-19-08. We therefore need not address BLM's conclusion in these decisions that CBD's requests for SDR were also untimely.

*CBD did not Timely Submit its Requests for SDR in the Remaining Two Decisions*

We now turn to the merits of BLM's two remaining decisions (SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B): whether CBD timely sought SDR.[45]

The regulation governing the SDR process is found at 43 C.F.R. § 3165.3. Subsection (b) of the regulation describes how SDR may be requested. It provides that "any adversely affected party" may request SDR of "a notice of violation or assessment or an instruction, order, or decision," and that a request for SDR must be filed in writing with the appropriate State Director "within 20 business days of the date such . . . decision was received or considered to have been received."

Here, BLM dismissed CBD's requests for SDR as untimely because CBD submitted them more than 20 days after the date the operators received notice BLM had approved the APDs—i.e., when BLM posted notice of the APD approvals on the AFMSS database. BLM argues that the regulatory requirement to request SDR "within 20 business days of

---

[44] *See supra* note 3 and accompanying text.
[45] *See* BLM California State Office Decision, SDR No. LLCA-921-19-09 at 3 (Oct. 24, 2019) (finding that CBD's request for SDR was late since it was filed more than 20 business days after the operator received notification of the APD approvals); BLM California State Office Decision, Request for SDR Denied, SDR No. LLCA-921-19-10-B at 3 (Nov. 6, 2019) (same).

the date such . . . decision was received or considered to have been received" necessitates that CBD must request SDR within 20 business days of when BLM provides notice to operating rights owners or operators under 43 C.F.R. § 3165.3(b).[46] We disagree.

We find that this case is governed by the Board's decision in *Three Forks Ranch, Inc.*[47] In that case, the Board held that, by voicing its objection to a proposed decision, the appellant "became a party to the proceeding," and, "[a]s a party to that proceeding, [the appellant] should have been served with a copy of BLM's decision."[48] Because the appellant in the case had participated and was entitled to notice of BLM's decision, the Board held that a request for SDR was due within 20 business days of the appellant's receipt of the decision.[49]

CBD is in the same position. Because CBD participated in the decision-making process for the APDs at issue in SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B, CBD gained party status and was entitled to notice of BLM's decisions approving those APDs.[50] And because CBD was entitled to notice of BLM's decisions, the 20-day period under 43 C.F.R. § 3165.3(b) ran from the date of CBD's receipt of the decisions.[51] As we have explained, "[w]hen a party who is entitled to service of a BLM decision has not been served, this Board has recognized the principle of notice based upon actual knowledge . . . ."[52]

---

[46] Motion for Summary Judgment at 27-29.
[47] 171 IBLA 323, 328 (2007).
[48] *Id.*
[49] *Id.*
[50] *Id.*; *see Utah Wilderness Association*, 91 IBLA 124, 128-29 (1986) (finding that BLM was obligated to notify "appropriate interested parties" of pending APDs under 43 C.F.R. § 3162.3-1(f) (1986)), *overruled to the extent inconsistent with Utah Chapter of the Sierra Club*, 121 IBLA 1 (1991) (holding that a timely appeal to the Board suspends the effect of a decision approving an APD). We note that the current regulations contain similar language in subsection (h): "Upon initiation of the Application for Permit to Drill process, the authorized officer shall consult with the appropriate Federal surface management agency and with other interested parties as appropriate . . . ."
[51] *See Three Forks Ranch, Inc.*, 171 IBLA at 328.
[52] *Id.*; *cf. Wildlands Defense*, 187 IBLA 233, 236 (2016) ("[W]hen BLM fails to serve a decision on a *party*, . . . the party has 30 days from the receipt of actual notice of the decision in which to file an appeal.").

IBLA 2020-37

Citing two Board decisions—*Orvin Froholm*[53] and *Southern Utah Wilderness Alliance*[54]—BLM urges the Board to apply the 20-day SDR timeframe in 43 C.F.R. § 3165.3(b) from when the operator received the decision, regardless of who is requesting SDR. BLM states: "the SDR request period is from when approval is received by the operator—not when it is received by a third-party."[55] BLM also cites to the Board's order in *Theodore Roosevelt Conservation Partnership*.[56]

But the Board's unpublished order in *Theodore Roosevelt Conservation Partnership* is not binding precedent,[57] and neither *Froholm* nor *Southern Utah Wilderness Alliance* supports BLM's position because they do not address BLM's obligation to inform parties of decisions subject to the SDR process or when a request for SDR is due following such notice.

In *Froholm*, for example, the Board ruled that BLM approvals of units and participating areas "must be considered as constructively served on all joined interest owners" on the date the approval was received by the unit operator, and that "any appeal [under 43 C.F.R. § 3165.3] had to be filed within 20 days of such receipt."[58] This case did not address BLM's obligation to notify entities other than joined interest owners in the unit of a decision after such entities participated in the decision-making process and whether such notice would change the deadline for an SDR request. And in *Southern Utah Wilderness Alliance* (SUWA), the Board affirmed a BLM decision dismissing SUWA's request for SDR as untimely because it made the request more than 20 days after the lease owner received notice of BLM's decision.[59] But SUWA had not participated in the decision-making process and therefore was not a party, and the Board did not address whether BLM would have been required to notify SUWA of the decision if SUWA had participated and whether that situation would have changed the due date for a request for SDR.

Because these decisions do not address the facts of this case, they are not controlling here, where CBD participated in the decision-making process leading up to SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B and therefore has party status and was entitled to notice of BLM's decisions approving the APDs.

---

[53] 132 IBLA 301 (1995).
[54] 148 IBLA 117 (1999).
[55] Motion for Summary Judgment at 27.
[56] Order, IBLA 2011-236 (May 17, 2012).
[57] *Southern Utah Wilderness Alliance*, 190 IBLA 152, 168 (2017).
[58] 132 IBLA at 309.
[59] 148 IBLA at 119.

195 IBLA 311

We also reject BLM's argument that the date it made the DR and NEPA documents available to the public or an interested party would be significant only for purposes of filing an appeal with the Board, but not for requesting SDR.[60] BLM's argument appears to assume that CBD had a choice either to seek SDR of the APD approvals or to file an appeal with the Board of the DRs documenting those approvals. But no such choice exists. The Board has long held that for decisions related to oil and gas operations, the SDR regulations make seeking SDR a prerequisite to an appeal to this Board.[61]

Because we have determined that BLM was required to notify CBD of its decisions approving the APDs after CBD sought to participate in those decisions, CBD's time for requesting SDR ran from the date CBD received them.

For SDR LLCA-921-19-09, CBD states that it received the decision approving the APDs on September 11, 2019, and BLM does not dispute this date.[62] The 20-business-day period for seeking SDR therefore ended on October 9, 2019. The record shows that CBD filed its request for SDR on October 10, 2019, one day after the 20-day SDR period closed.[63] For SDR LLCA-921-19-10-B, CBD states that it received the decision approving the APDs on August 30, 2019, and BLM does not dispute this date.[64] The 20-business-day period for seeking SDR therefore ended on September 30, 2019. The record shows that CBD filed its request for SDR on October 1, 2019,[65] again, one day after the 20-business-day SDR period closed. Based on these facts, we find that CBD's requests for SDR of

---

[60] Motion for Summary Judgment at 30 ("Appellant did not file appeals from the BLM's decision record and associated NEPA. Instead, Appellant requested SDR.").

[61] *Southern Utah Wilderness Alliance*, 122 IBLA 283, 285-86 (1992) ("This Board has previously examined this regulatory history and interpreted 43 CFR 3165.3(b) as requiring that SDR is mandatory before an appeal from an APD decision may be brought to this Board.") (citing *Utah Chapter Sierra Club*, 114 IBLA 172 (1990); *San Juan Citizens Alliance*, 104 IBLA 288 (1988)); *see Southern Utah Wilderness Alliance*, 190 IBLA 152, 159-60 (2017) (holding that decisions approving or denying a suspension of operations are not directly appealable to the Board and must first be subject to the SDR process).

[62] Opp. to Summary Judgment at 9.

[63] *See* BLM California State Office Decision, SDR No. LLCA 921-19-09 at 2 (Oct. 24, 2019) ("The Request [for SDR] was received in the California State Office via Federal Express on October 10[, 2019].").

[64] Opp. to Summary Judgment at 9.

[65] AR, Letter from CBD to BLM, Request for California State Director Review, Request for Stay, Request for Extension of Time, and Request for Oral Presentation (Sept. 30, 2019) (date-stamped received by BLM California State Office on Oct. 1, 2019).

IBLA 2020-37

BLM's decisions approving the APDs at issue in SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B were untimely.

CBD indicates that its requests for SDR were timely because each was mailed on the due date.[66] This, however, is incorrect.

The SDR regulation requires that a request for SDR, including all supporting documentation, be "filed in writing with the appropriate State Director" within 20 days.[67] Although the regulations governing onshore oil and gas operations, including the regulations in Subpart 3165, do not define the meaning of "filed," the Board has explained that a request for SDR is "filed" when it is received, and "[p]roof of mailing . . . is not the equivalent of proof of receipt."[68] Further, BLM's general regulations governing application procedures define "filed" as the date a document is received in the appropriate BLM office.[69]

We find no support for CBD's statement that the postmark date of its requests constitutes the date those requests were filed. Nor does CBD provide any support for its assertion. We therefore conclude that CBD's requests for SDR were untimely, and we affirm the Deputy State Director decisions SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B. But we modify those decisions to reflect our conclusion that because CBD was a party to these decisions, the 20-business-day time frame for seeking SDR ran from the date CBD received notice of BLM's decisions approving the APDs.

CONCLUSION

Based on the foregoing, we find that CBD lacked party status and therefore was ineligible to seek SDR of seven of the decisions approving APDs. We further find that because CBD was a party eligible to seek SDR of the remaining two decisions, the 20-business-day time period for seeking SDR of those decisions properly ran from the date CBD received notice of the decisions. But because CBD submitted its requests for SDR late, BLM properly dismissed its requests as untimely.

---

[66] Opp. to Summary Judgment at 8-9 (in a table summarizing relevant dates, one of the headers is: "Date of SDR filing (postmark date)").

[67] 43 C.F.R. § 3165.3(b).

[68] *National Wildlife Federation*, 162 IBLA 263, 266 (2004); *see, e.g., Entek GRB, LLC*, 191 IBLA 291, 294-95 (2017); *Black Hills Plateau Production, LLC*, 188 IBLA 368, 371, 372 (2016).

[69] 43 C.F.R. § 1822.11 (specifying that for "application[s] and any other required documents," "[t]he date of mailing is not the date of filing").

195 IBLA 313

IBLA 2020-37

      Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior,[70] we deny BLM's motion to dismiss; affirm decisions SDR LLCA-921-19-02 through SDR LLCA-921-19-08, and affirm as modified decisions SDR LLCA-921-19-09 and SDR LLCA-921-19-10-B. We also deny BLM's motion to decouple the appeals and CBD's petition for stay as moot.

/s/
Amy B. Sosin
Administrative Judge

I concur:

/s/
Silvia Riechel Idziorek
Administrative Judge

---

[70] 43 C.F.R. § 4.1.