# EXHIBIT F3

# Williams Fields Services Company, 193 IBLA 11 (2018)







WILLIAMS FIELD SERVICES COMPANY

193 IBLA 11 Decided May 29, 2018




United States Department of the Interior
Office of Hearings and Appeals
Interior Board of Land Appeals
801 N. Quincy St., Suite 300
Arlington, VA 22203

703-235-3750 703-235-8349 (fax)

WILLIAMS FIELD SERVICES COMPANY

IBLA 2015-179 Decided May 29, 2018

Appeal from a decision dated April 6, 2015, by the Acting Assistant Field Manager, Pinedale (Wyoming) Field Office, Bureau of Land Management, determining the rent for rights-of-way WYW124252 and WYW91117.

Set Aside and Remanded.

1. Administrative Procedure: Administrative Record; Appraisals: Rights-of-Way; Mineral Leasing Act of 1920: Rights-of-Way

   It is incumbent upon BLM to ensure that its decision is supported by a rational basis, and that such basis is stated in the written decision and supported by the administrative record accompanying the decision. The recipient of the decision is entitled to a reasoned and factual explanation providing a basis for understanding and accepting the decision or, alternatively, for appealing and disputing it before the Board.

2. Administrative Procedure: Burden of Proof; Mineral Leasing Act of 1920: Rights-of-Way

   The Board will not set aside an appraisal unless the appellant demonstrates error in the appraisal method used by BLM or shows that the resulting charges are excessive. Absent a showing of error in the appraisal methods, an appellant is normally required to submit its own appraisal to present sufficiently convincing evidence that the rental charges are excessive.

3 Administrative Procedure: Administrative Record; Appraisals: Rights-of-Way; Mineral Leasing Act of 1920

BLM has independent duties (a) to provide the right-of-way holder with a reasoned and factual explanation providing a basis for understanding and accepting the rental rate decision or, alternatively, for appealing and disputing it before the Board; and (b) to provide the Board with a complete administrative record if an appeal is filed so that the Board may assess the appellant's claims and determine whether BLM erred in making its decision.

APPEARANCES: Kyle Hoffman, Land Representative, Green River, Wyoming, for Williams Field Services Company; Danielle DiMauro, Esq., Office of the Solicitor, Rocky Mountain Region, U.S. Department of the Interior, Lakewood, Colorado, for the Bureau of Land Management.

OPINION BY ADMINISTRATIVE JUDGE HAUGRUD

SUMMARY

Appellant Williams Field Services Company (Williams) appeals from the rental determination made on April 6, 2015, by the Bureau of Land Management (BLM) for rights-of-way WYW124252 (Saddle Ridge site) and WYW91117 (LaBarge site). BLM based its rental determination on appraisals conducted for each site. In issuing its decision, BLM provided Williams with only its new rental amounts and did not provide the appraisals or any other information concerning how it arrived at the new rentals. The Board has long held that the recipient of a rental decision is entitled to a reasoned and factual explanation providing a basis for understanding and accepting the decision or, alternatively, for appealing and disputing it before the Board. In this instance BLM failed to provide such an explanation. Accordingly, BLM's rental decision must be set aside and remanded to BLM for action consistent with this decision.

FACTUAL AND PROCEDURAL BACKGROUND

The Saddle Ridge and LaBarge rights-of-way are used as natural gas compressor station sites. Each right-of-way was issued for a 30-year term subject to renewal.[1]

---

[1] Right-of-way WYW91117 (LaBarge ROW Grant) and right-of-way WYW124252 (Saddle Ridge ROW Grant), at ¶ 2(c).

BLM issued the LaBarge right-of-way on July 21, 1989.[2] The site is in Lincoln County, Wyoming, is 453 feet wide by 700 feet long, and contains 6.5 acres.[3] Originally granted to the Northwest Pipeline Corporation, the right-of-way was assigned to Williams Gas Processing Company on April 3, 1993. On January 27, 2005, BLM recognized the merger of that company and Williams Gas Processing-Wamsutter into Williams Field Services Company.[4] Because the merger has no relevance to this appeal, this decision refers to either the merged company or its predecessors simply as Williams.

BLM granted the right-of-way for the Saddle Ridge site to Williams on April 30, 1993.[5] The site is 400 feet wide by 600 feet long, and contains 5.51 acres in Sublette County, Wyoming.[6]

The right-of-way grants contain identical provisions governing rental, requiring the payment of fair market value, and allowing BLM to make periodic adjustments to the rates:

> For and in consideration of the rights granted, the holder agrees to pay [BLM] fair market value rental as determined by the authorized officer unless specifically exempted from such payment by regulation. Provided, however, that the rental may be adjusted by the authorized officer, whenever necessary, to reflect changes in the fair market rental value as determined by the application of sound business management principles, and so far as practicable and feasible, in accordance with comparable commercial practices.[7]

The rent for each site has been adjusted multiple times based on appraisals. For the LaBarge site, BLM made its initial rental determination on July 22, 1992, setting an annual rental of $500 starting in 1993 and requiring a separate payment of $1,708 to cover rental charges from the right-of-way inception through the end of 1992.[8] For the Saddle Ridge site, BLM initially set the rental at $450 annually, based on an appraisal review dated April 22, 1993.[9]

---

2 LaBarge ROW Grant at 2.
3 *Id.* at ¶ 2(b).
4 BLM Answer at 3.
5 Saddle Ridge ROW Grant at 2.
6 *Id.* at ¶ 2(b).
7 LaBarge and Saddle Ridge ROW Grants at ¶ 3.
8 BLMA Answer at 2.
9 *Id.*

In January 1999, BLM issued decisions setting the annual rental at $500 for each site.[10] On December 30, 2004, having completed a reappraisal of the two sites, BLM issued decisions retaining the annual rental at each site at $500 through December 17, 2009.[11] In 2010, the Department of the Interior's Office of Valuation Services (OVS) conducted new appraisals of both rights-of-way. Based on those appraisals, BLM issued decisions dated May 28, 2010, and June 29, 2010, notifying Williams that the new annual rental charges would be $3,030 for the Saddle Ridge site and $3,575 for the LaBarge site.[12] Williams did not appeal the 2010 rental determinations. Williams timely paid the rent in full annually through 2014 for both sites.[13]

On April 6, 2015, BLM issued the decision challenged in this appeal, which set the annual right-of-way rental at $4,130 for the Saddle Ridge site and $4,875 for the LaBarge site. The entirety of the substantive portion of the decision is set out below:

> Regulations appearing in 43 CFR 2800 require the payment of fair market value for the use and occupancy of the public lands. After reappraisal, the rental charges for the following rights-of-way have been determined as follows:

| Serial Number | Right-of-Way Purpose | Annual Rental Amount |
|---|---|---|
| WYW-124252 | Saddle Ridge Compressor Site | $4,130.00 |
| WYW-91117 | LaBarge Compressor Site | $4,875.00 |

> Next bill date for all referenced rights-of-way is January 1, 2016.[14]

The remaining information in the decision is a one-sentence admonition not to pay the amounts until a billing notice is received followed by paragraphs describing the right to appeal the decision to the Board.[15] The decision does not provide any description or explanation of how the revised rents were determined or provide any of the underlying appraisal information.

---

10 *Id.*
11 *Id.* at 2-3.
12 *Id.* at 3.
13 *Id.* at 2-3.
14 BLM 2015 Rental Decision at 1.
15 *Id.* at 1-2.

Williams filed its notice of appeal of BLM's decision on May 1, 2015, and its statement of reasons (SOR) on May 28, 2015. Williams states it also filed a Freedom of Information Act request for copies of "the specific appraisals that were used to determine the rental amount," but it had not yet received the documents.[16]

Williams did not submit an appraisal with its SOR or provide any other extrinsic evidence in support of its appeal. Instead, Williams raised objections that "are general to the appraisal techniques currently being used in Wyoming to value oil and gas rentals on BLM lands."[17] Apparently basing its critique on previously completed BLM appraisals, Williams objected to BLM's Saddle Ridge and LaBarge appraisals to the extent they relied on transactions: (a) where eminent domain authority could be or was used; (b) not comparable to Williams' remote sites because of proximity to towns, highways or existing utilities; (c) not comparable because they were too far away to be indicative of the fair market rental value at the assessed sites; or (d) not comparable because of other circumstances such as unusually high transaction costs or disparate bargaining power between the lessor and lessee.[18] Williams argues that because no appropriate comparable leased properties were available, BLM should have determined the fair market rental value by calculating a reasonable rate of return on the appraised property value.[19]

BLM submitted the administrative record for its decision on June 29, 2015. The filed record includes two appraisal reports, one each for Saddle Ridge and LaBarge, prepared for BLM by the Department's OVS. These reports form the basis for BLM's rental determination.

BLM's memorandum transmitting the record states that the two appraisal reports contain both confidential and non-confidential information.[20] BLM marked the specific information it considered confidential in the record by framing it within outlined red boxes. According to BLM, "[t]he confidential information includes the specific location of comparable leased properties, the identities of the lessors and lessees of those properties, and information that could be used to discern the lessors' and lessees' identities."[21]

---

16 SOR at unpaginated (unp.) 1.
17 *Id.*
18 *Id.* at unp. 1-2.
19 *Id.* at unp. 2.
20 BLM AR Transmittal Memorandum at 1 (June 25, 2015).
21 *Id.* at 2.

The memorandum states: "BLM does not intend to use the confidential information as evidence, and therefore is not submitting a request for nondisclosure pursuant to 43 C.F.R. § 4.31."[22] Under 43 C.F.R. § 4.31, BLM could have requested the Board to consider the information in reviewing BLM's decision but keep it confidential. BLM chose not to do so and instead included the information in its submission to the Board "'as a matter of common practice because departmental records are not immune from review by the Secretary or the Board acting on the Secretary's behalf.'"[23] In such circumstances, the Board will not consider or rely on the confidential information in reviewing a decision on appeal.[24] This practice is required by our regulations which provide that no decision on appeal "shall be based upon any record, statement, file, or similar document which is not open to inspection by the parties to the hearing or appeal, except for documents or other evidence received or reviewed pursuant to § 4.31(d)."[25]

BLM filed its answer on August 3, 2015. In defending BLM's appraisals, the Answer describes in some detail the methodology used by BLM, and it frequently cites or quotes from the reappraisal, but it does not specifically rely on any of the information claimed as confidential by BLM.[26] Of importance, the Answer also does not suggest that Williams was ever provided the appraisals or any other information explaining the basis for BLM's rental determination prior to receiving BLM's Answer.

## STATUTORY AND REGULATORY BACKGROUND

BLM granted the rights-of-way under the authority of section 28 of the Mineral Leasing Act (MLA),[27] which authorizes rights-of-way across Federal lands "for pipeline purposes for the transportation" of natural gas or other listed liquid fuels.[28] A right-of-way may be granted for a pipeline itself as well as for "its related facilities,"[29] such as the natural gas compressor sites at issue here. The MLA anticipates that related facilities "need not necessarily be connected or contiguous

---

[22] *Id.* at 1.

[23] *Id.* at 2 (quoting *Hall Family Trusts,* 182 IBLA 188, 189 (2012)).

[24] *Hall Family Trusts*, 182 IBLA at 189 ("Where BLM submits documents not under § 4.31, but nevertheless claims they are privileged as attorney-client communications or attorney work product, the Board will not consider or rely on those documents in reviewing the appealed decision.").

[25] 43 C.F.R. § 4.24(a)(4).

[26] *See* BLM Answer at 3-5 and 8-11 (describing 2015 appraisals).

[27] 30 U.S.C. §§ 181-287 (2012).

[28] *Id.* § 185(a).

[29] *Id.* § 185(d).

to the pipe and may be the subjects of separate rights-of-way.[30] A grantee must pay "annually in advance the fair market rental value of the right-of-way or permit, as determined by the Secretary or agency head."[31]

MLA rights-of-way may be categorized as either "linear" or "areal," depending on the principal purpose of the grant. Although neither the MLA nor the implementing regulations defines the two terms, the BLM Manual states that a MLA right-of-way "grant is areal if the specifically authorized activity requires the use and occupancy of a site, station, location, tract, etc., as opposed to a route, corridor, or path."[32] The parties do not dispute that the Saddle Ridge and LaBarge rights-of-way are areal (i.e., non-linear).

The distinction between linear and non-linear rights-of-way is often important in determining the rent. In most instances, the rent for a linear MLA right-of-way is determined by a per-acre rent schedule.[33] In contrast, the current MLA regulations do not specify how to calculate the rent for a non-linear MLA right-of-way. However, the BLM Manual states that the rent should be determined using an appraisal. Using a metering station as an example of a non-linear MLA right-of-way, the Manual states that "the rent is determined by appraisal" and refers to the regulations governing rights-of-way issued under the Federal Land Policy and Management Act (FLPMA)[34] for further details on appraisals.[35] The applicable FLPMA regulation states that rent for rights-of-way not subject to a payment schedule may be determined "through a process based on comparable commercial practices, appraisals, competitive bid, or other reasonable methods."[36]

The current Manual directions for determining rent are consistent with the terms of the Saddle Ridge and LaBarge right-of-way grants that provide for rental adjustments "determined by application of sound business management principles, and so far as practicable and feasible, in accordance with comparable commercial practices."[37] This grant language mirrors the previous regulatory provisions for

---

[30] *Id.*
[31] *Id.* § 185(l).
[32] BLM Manual § 2885.16A.2; *see also* BLM Manual § 2806.10A.3 (using same definition for rights-of-way issued under other statutory authority).
[33] *See* 43 C.F.R. § 2885.19.
[34] 43 U.S.C. §§ 1701-1785 (2012).
[35] BLM Manual § 2885.16A.2.a.(2) (citing to 43 C.F.R. § 2806.50 for details on appraisals; the referenced regulation has been redesignated without substantive revision at 43 C.F.R. § 2806.70).
[36] 43 C.F.R. § 2806.70.
[37] LaBarge and Saddle Ridge ROW Grants at ¶ 3.

determining fair market value that were in effect at the time the rights-of-way were issued.[38] The Board has interpreted this prior regulatory language and held that the "preferred method for appraising the fair market rental value of nonlinear rights-of-way is the comparable lease method, where there is sufficient comparable rental data and appropriate adjustments are made for differences between the subject site and other leased sites."[39]

SCOPE AND STANDARD OF REVIEW

The Board reviews the allegations and any evidence submitted by an appellant to determine whether BLM has erred procedurally or substantively in reaching its decision. The Board has previously established the duties incumbent on both BLM and an appellant in reviewing challenges to a rental determination based on an appraisal, applying substantively identical standards regardless of whether the appraised right-of-way was issued under the authority of the MLA or FLPMA.[40]

[1] In the context of appraisals, we have held that "it is incumbent on BLM to ensure that its decision is supported by a rational basis and that such basis is stated in the written decision and is demonstrated in the administrative record accompanying the decision."[41] Of critical importance to this case, "the recipient of the decision is entitled to a reasoned and factual explanation providing a basis for understanding and accepting the decision or, alternatively, for appealing and disputing it before the Board."[42] The Board has found an appraisal to be "fatally flawed" where it "fails to disclose the location of private lease transactions and the

---

[38] *See* 43 C.F.R. § 2883.1-2 (2004), which directed payments to be made "in accordance with [43 C.F.R.] § 2803.1-2." Section 2803.1-2 (2004) stated, in turn, that the grantee shall pay "the fair market value as determined by the authorized officer applying sound business management principles, and so far as practicable and feasible, in accordance with comparable commercial practices."

[39] *Wesfrac, Inc.*, 153 IBLA 164, 168 (2000); *see also Alaska Pipeline Co.*, 164 IBLA 149, 152 (2004) ("[R]ental value determinations may be made on the basis of comparable leases, which is the preferred approach and, thus, consistent with 'comparable commercial practices,' as required by 43 CFR 2803.1-2(a).").

[40] *Compare, e.g.*, *Wesfrac*, 153 IBLA at 167-68 (describing standard to challenge MLA right-of-way rent appraisal) with *Robert B. Kaplan*, 187 IBLA 121, 127-129 (2016) (describing standard to challenge FLMPA land use permit appraisal and citing *Wesfrac*).

[41] *Robert B. Kaplan*, 187 IBLA at 127-129 (quoting *KHWY, Inc.*, 155 IBLA 6, 15 (2001)).

[42] *Id.*

parties thereto, such that Appellant could verify the data obtained."[43] More generally, the Board has required that appraisals include "enough specifics" about the comparable leases to permit an independent assessment of whether those leases were in fact comparable to an appellant's site,[44] and has consistently rejected the claim that site-specific information reviewed by an appraiser to establish the fair market rental of a right-of-way is confidential.[45] An appraisal which fails to disclose any information regarding the comparable data utilized is flawed because it "preclude[s] independent verification of the lease data, effective challenge as to the accuracy of the data and appraisal, and meaningful review by the Board."[46]

[2] In reviewing the merits of a right-of-way appraisal, the Board will set it aside if the appellant demonstrates error in the appraisal method used by BLM or shows that the resulting charges are excessive.[47] Absent a showing of error in the appraisal methods, an appellant is normally required to submit its own appraisal to present sufficiently convincing evidence that the rental charges are excessive.[48]

## DISCUSSION

As discussed below, BLM's rental determination must be set aside and remanded because the agency failed to provide Williams with any explanation of its methodology for determining the new rental rate. Given this resolution, we do not address the merits of Williams' criticisms of what it presumed was BLM's appraisal methodology.

Williams attempts to attack the merits of BLM's rental determination by contending that BLM erred by relying on appraisals that used a flawed comparable lease analysis rather than an income, or reasonable rate of return, methodology. Having received no information concerning the appraisals, Williams makes only speculative and conclusory allegations of what it believes BLM may have done improperly. BLM's Answer addresses these merits arguments, but does not address the process issue raised by Williams in its SOR — that the company did not receive

---

43 *Mountain States Telephone & Telegraph Co.*, 107 IBLA 82, 89 (1989).

44 *Lone Pine Television, Inc.*, 158 IBLA 86, 102 (2002); *see also Kaplan,* 187 IBLA at 128-129 (setting aside decision based on appraisal that "did not identify or include any of the underlying data relied upon, or specific information about any of the leases examined for comparison purposes.").

45 *Lone Pine Television,* 158 IBLA at 102; *Kitchens Production Inc.*, 152 IBLA 336, 345 (2000); *KHWY, Inc.*, 155 IBLA at 14.

46 *Kaplan,* 187 IBLA at 128 (quoting *Lone Pine Television*, 158 IBLA at 102).

47 *Alaska Pipeline Co.*, 164 IBLA at 152 (citing *Wesfrac, Inc.*, 153 IBLA at 167-68).

48 *Id.*

the appraisals used by BLM in this case or any other information explaining the basis for BLM's decision.[49]

Without being provided any information on how BLM prepared its appraisals, Williams' appeal rights are hollow. An appellant cannot meet its burden of showing error in BLM's appraisal methodology when it is not told of that methodology. While Williams could still assert the rental was excessive by presenting its own appraisal, the right to show error in BLM's methodology is effectively eliminated when no explanation of that methodology is provided. For these reasons, the Board has repeatedly and specifically held in the context of BLM appraisals that the "recipient of the decision is entitled to a reasoned and factual explanation providing a basis for understanding and accepting the decision or, alternatively, for appealing and disputing it before the Board."[50]

[3] In most of the Board decisions finding a failure to provide a reasoned explanation of a right-of-way rental determination, BLM also failed to provide the Board with an adequate administrative record upon which its decision could be meaningfully reviewed.[51] These cases accordingly do not always differentiate between the duty to provide information to the right-of-way holder and to the Board. To be clear, BLM has independent duties (a) to provide the right-of-way holder with a reasoned and factual explanation providing a basis for understanding and accepting the rental rate decision or, alternatively, for appealing and disputing it before the Board;[52] and (b) to provide the Board with a complete administrative record if an appeal is filed so that the Board may assess the appellant's claims and determine whether BLM has erred in making its decision.[53] BLM's decision is properly set aside if it fails to fulfill either of these duties.

---

[49] *See* SOR at 1 (stating that the company had requested but not received the appraisals underlying the rental determination).

[50] *Robert B. Kaplan*, 187 IBLA at 128 (quoting *KHWY*, 155 IBLA at 15); *see Kitchens Productions, Inc.*, 152 IBLA at 345; *cf.*, *Southern Union Exploration Co.*, 51 IBLA 89, 92 (1980) (rationale for rejecting competitive lease bid) (" The explanation provided must be a part of the public record and must be adequate so that this Board can determine its correctness if disputed on appeal."); *Larry Brown & Assoc.*, 133 IBLA 202, 205 (1995) (road-use fees); *Kanawha & Hocking Coal & Coke Co.*, 112 IBLA 365, 367-68 (1990) (coal royalty rate determination).

[51] *See, e.g., Kaplan,* 187 IBLA at 128.

[52] *See id.*, and cases cited therein.

[53] 43 C.F.R. § 4.411(d)(3) (requiring submission of the "complete administrative record compiled during the officer's consideration of the matter leading to the decision being appealed").

In this instance, BLM failed to discharge its disclosure duty to Williams. As described earlier, BLM provided Williams with a one and one-half page decision, entitled "After Reappraisal Rental Determinations," that merely states the new annual rental fee for each right-of-way and provides Williams with information on how to appeal the decision to the Board. BLM's decision provides no description of the methodology or information used by BLM in preparing the appraisals, and there is no indication any additional information was attached to or accompanied the decision document. At the time it filed its statement of reasons, Williams had sought the appraisals through a Freedom of Information Act request but had not received them. BLM's Answer does not dispute Williams' statement or indicate that any information concerning the appraisals had previously been provided to Williams. Thus, BLM erred by failing to provide Williams with any information concerning the appraisals at the time it issued its rental rate determination. As we have previously held, "the failure to disclose is an error which compromises the appraisal process. Such an error can only be corrected by disclosure."[54]

In holding that BLM must disclose to the right-of-way holder more than just the rental it must pay, we do not decide precisely how or what information must be provided to the right-of-way holder. But consistent with our previous decisions,[55] BLM must provide a reasoned and factual explanation to the right-of-way holder that provides a basis for understanding the rental rate decision and determining whether to dispute it before the Board.

---

[54] *KHWY, Inc.*, 155 IBLA at 16.

[55] *See* footnotes 42-46 and 50 above and accompanying text.

CONCLUSION

BLM failed to provide to Williams an adequate explanation of its decision dated April 6, 2015, determining the rent for rights-of-way WYW124252 and WYW91117. Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior,[56] the rental decision appealed from is set aside and remanded to BLM for action consistent with this decision.

K. Jack Haugrud
Administrative Judge

I concur:

James K. Jackson
Administrative Judge

[56] 43 C.F.R. § 4.1.