**EXHIBIT F10**

**Robert M. Sayre,
131 IBLA 337 (1994)**

## 131 IBLA 337; 1994 IBLA LEXIS 249

Interior Board of Land Appeals

December 27, 1994, Decided

IBLA 91-450

*Department of Interior Board of Land Appeals*     *Decisions*

**Reporter**
131 IBLA 337 *; 1994 IBLA LEXIS 249 **

# ROBERT M. SAYRE

## Core Terms

resurvey, corner, protest, southeast corner, foot, plat

## Headnotes

1. Administrative Procedure: Standing--Rules of Practice: Appeals: Dismissal--Rules of Practice: Appeals: Standing to Appeal--Surveys of Public Lands: Dependent Resurveys

The Board will dismiss an appeal from a BLM decision dismissing a protest of the section line adopted in dependent resurveys where the appellant fails to demonstrate that he has been adversely affected by such dismissal since he has no legally cognizable interest which will affected by BLM's placement of the line.

## Counsel

APPEARANCES: Robert M. Sayre, pro se; Lyle K. Rising, Esq., Office of the Regional Solicitor, U.S. Department of the Interior, Denver, Colorado, for the Bureau of Land Management.

## Action

 [**1]

 [*337] Appeal from a decision of the Acting State Director, Colorado, Bureau of Land Management, dismissing protest of two dependent resurveys of public lands. Group Nos. 335 and 726, Colorado.

Appeal dismissed.

**Opinion By:** GRANT

## Opinion

171

OPINION BY ADMINISTRATIVE JUDGE GRANT

Robert M. Sayre has appealed from a decision of the Acting State Director, Colorado State Office, Bureau of Land Management (BLM), dated July 24, 1991, dismissing his protest of BLM's 1948 and 1983 dependent resurveys of the line between secs. 25 and 26, T. 1 S., R. 73 [**2] W., sixth principal meridian, Colorado.

This case concerns the line between secs. 25 and 26 of the subject township and two corners along that line, i.e., the southeast corner of sec. 26 (the corner common to secs. 25, 26, 35, and 36) and the east quarter corner of sec. 26 (between secs. 25 and 26). The section line now marks the boundary line between private land in sec. 25 and public land in sec. 26. The southeast and east quarter corners of sec. 26 were originally monumented by Benjamin M. Whittemor in 1871 in connection with his [*338] survey of the subdivisional lines of the township. The southeast corner was marked by a standing 12-inch diameter pine tree and the east quarter corner by a post set in the ground.

BLM dependently resurveyed (Group No. 335, Colorado) the township subdivisional lines in 1941. Whittemor's southeast and east quarter corners were not found during the course of that resurvey and were considered lost. BLM reestablished both of them by proportionate measurement. See Manual of Instructions for the Survey of the Public Lands of the United States, 1973 at 133-34. The resurvey was accepted on March 15, 1943, and the field notes and plat were officially [**3] filed on June 9, 1948.

Subsequently, BLM received a letter dated April 15, 1966, from Alfred G. Hoyl, trustee of the privately owned Los Lagos Ranch property in sec. 25, asserting that the plotted position of the quarter corner on the resurvey plat was out of place while all other points are "reasonably correct." Subsequently, in 1983 Danny L. McDonald, a BLM cadastral surveyor, performed a corrective dependent resurvey (Group No. 726, Colorado) in order to correct an error in the placement of the monument for the east quarter corner of sec. 26 since it was contrary to the position reported in the 1948 resurvey. The effect of the correction was to move the corner 114.2 feet to the south and 22.4 feet to the east, thus slightly altering the location of the section line. The corrective resurvey was accepted on September 2, 1983, and the field notes and plat were officially filed on September 23, 1983. Notice of acceptance and the official filing was published in the Federal Register on October 3, 1983 (*48 FR 45158*).

On April 18, 1984, Robert H. Sayre, Jr., appellant's father, protested BLM's 1983 corrective dependent resurvey, specifically objecting to [**4] BLM's placement of the line between secs. 25 and 26 as tied to the east quarter corner of sec. 26. [1] In his protest and subsequent meetings with BLM (at which he was assisted by appellant, a registered land surveyor in the State of Colorado), Sayre alternatively asserted that the east quarter corner should be either the original 1948 corner or a fence corner about 20 feet north and 100 feet west of BLM's location for the corner, thus matching one record call to the south (i.e., to a gulch). See Protest, dated Apr. 18, 1984, at 2; Memorandum to the Record, dated July 5, 1984. The State Director dismissed Sayre's protest on its merits by letter dated October 15, 1985. According to BLM, a copy of the October 1985 decision was served on Sayre and is deemed to have been received by him [*339] on October 30, 1985. See Decision at 1. No appeal was taken from the October 1985 decision within 30 days of receipt of the decision, as required by regulation. *43 CFR 4.411(a)*. Thus, that decision became final for the Department.

[**5]

By letter dated June 14, 1991, appellant notified BLM that, as a result of recent surveying efforts, he had uncovered problems with BLM's dependent resurvey with respect to the southeast corner of sec. 26. He stated that the southeast corner "[p]ossibly" should be regarded as obliterated, rather than lost, since its location could be recovered by the use of acceptable record evidence. See Letter to BLM, dated June 14, 1991, at 2. Appellant stated that he had determined the location of the southeast corner by using the ties to that corner as reported in the

---

[1] The record indicates that Sayre has an ownership interest in the "Los Lagos Ranch," which encompasses private land in sec. 25 whose boundaries are defined by the southeast and east quarter corners of sec. 26. See BLM Decision, dated Oct. 15, 1985, at 3.

original 1874 United States mineral surveys (MS) for the "Parker" (MS No. 303) and "Hope" (MS No. 304) lode mining claims and six out of the eight original corners of those claims found on the ground. Appellant submitted a copy of a June 11, 1991, plat reflecting his "dependent resurvey" of the two patented lode mining claims, with ties to the southeast corner of sec. 26 from corners No. 1 of the Parker and Hope mineral surveys. According to appellant, the result is to move the southeast corner of sec. 26, 20.5 feet to the south and 84 feet to the west from the position adopted by BLM in 1948. Finally, appellant continued to [**6] challenge BLM's location of the east quarter corner of sec. 26. See id. at 1.

BLM treated appellant's June 1991 letter as a protest to the 1948 and 1983 dependent resurveys. The Acting State Director dismissed the protest in his July 1991 decision, holding that the protest was merely a "continuation" of his father's protest which had already been dismissed with administrative finality (Decision at 1). Appellant appealed from the July 1991 decision.

As a threshold matter, we must consider whether appellant has standing to bring this appeal. A motion to dismiss the appeal for lack of standing has been filed by BLM. Appellant has opposed that motion.

[1] In order to have standing to appeal, an appellant must demonstrate that he is both a "party to [the] case" and "adversely affected" by the decision being appealed. 43 CFR 4.410(a). An appellant will only be considered adversely affected within the meaning of the regulation where he has suffered or is substantially likely to suffer an injury to a "legally cognizable interest." Storm Master Owners, 103 IBLA 162, 177 (1988); see Donald K. Majors, 123 IBLA 142, 143 (1992). [**7] Where BLM adjudicates particular rights to land, a legally cognizable interest must generally be an interest in the land (or its resources) or in other land (or its resources) affected in some way by the adjudication. See, e.g., Peter Paul Groth, 99 IBLA 104, 105 (1987). Such an interest need not constitute a property interest (either fee or less than fee). It may be an application for such an interest or even simply a lawful use of the land. See Storm Master Owners, supra at 182-83; National Wildlife Federation, 82 IBLA 303, 308 (1984).

Appellant admittedly has no interest in any land that is potentially affected by BLM's placement of the line between secs. 25 and 26 in the subject township. Indeed, he states that he "does not own any property in the [t]ownship" ("Notice of Appeal," dated Aug. 21, 1991, at 2). Rather, he states that he is simply a registered land surveyor whose "interest in this matter is the correct restoration of the original survey in this area to its true original position." Id.

While we respect appellant's professional interest regarding the proper restoration [**8] of the line between secs. 25 and 26 (as established by the 1871 survey), such concern does not rise to the level of a legally cognizable interest that has been adversely affected by BLM's dismissal of his protest for procedural reasons, and thus its implicit refusal to consider the merits of his substantive challenge to the 1948 and 1983 dependent resurveys. See Sharon Long, 83 IBLA 304, 308 (1984). Nor will appellant's general interest in seeing that BLM properly fulfills its surveying duties under 43 U.S.C. § 772 (1988) suffice to confer standing.

Therefore, we conclude that appellant lacks standing to bring the instant appeal, and it must be dismissed for that reason. See Wilogene Simpson, 110 IBLA 271, 275-76 (1989); Alice L. Alleson, 77 IBLA 106, 108 (1983). This is particularly true in a case such as this when the landowners who were involved in the earlier protest of the dependent resurveys did not appeal the BLM decision denying the protest. Hence, BLM's motion is granted.

Recognizing that we have no jurisdiction to review the merits of appellant's [**9] protest in the context of this appeal, we note that the burden of challenging a BLM dependent resurvey after final acceptance of the survey plat is substantial. Thus, the Board has held that, in reviewing a resurvey after the official filing of the plat, the party challenging the resurvey must establish by a preponderance of the evidence that the resurvey was fraudulent or grossly erroneous. Peter Paul Groth, 99 IBLA at 111. [2] It is clear from the memoranda to the record dated July 5 and August 6, 1984, addressing the substance of BLM discussions with appellant and with other property owners

---

[2] It appears that appellant's June 1991 letter is properly deemed a subsequent protest of the dependent resurveys rather than an untimely appeal of the earlier protest dismissal in view of the reference to newly discovered evidence.

regarding the accuracy of the dependent resurveys, that BLM determined the dependent resurvey as corrected was neither fraudulent nor grossly erroneous.

 [*341] Accordingly, [**10] pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, *43 CFR 4.1*, the appeal from the Acting State Director's July 1991 decision is dismissed.

C. Randall Grant, Jr., Administrative Judge

**Concur By:** IRWIN

**Concur:**

I concur:
Will A. Irwin, Administrative Judge

Department of Interior Board of Land Appeals        Decisions

**End of Document**