TODD BLANCHE
Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar Number 8264
MARILYN E. GARTLEY
Assistant United States Attorney
U.S. Attorney's Office
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: 702-388-5084
Email: marilyn.gartley@usdoj.gov

*Attorneys for the Federal Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Wild Horse Education, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>United States Department of Interior, Bureau of Land Management,<br><br>Defendant. | Case No. 3:25-cv-00152-MMD-CSD<br><br>**Federal Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 50)** |

The United States Department of Interior, Bureau of Land Management ("Federal Defendant" or "BLM"), by and through the undersigned counsel, does hereby file its Objection to Plaintiff's Notice of Motion and Motion for Attorneys' Fees and Costs ("Attorneys' Fees Motion"), filed by Wild Horse Education ("Plaintiff") on August 2, 2026. ECF No. 50.

## I. BACKGROUND

On October 7, 2019, BLM sent email correspondence to the Plaintiff confirming its receipt of the Plaintiff's FOIA Request dated September 28, 2019 ("FOIA Request"), ECF No. 36-2, Ex. B, which BLM indicated it had received on September 30, 2019, and had assigned control number 2020-00032. Ex. 1. The FOIA Request sought "Any and all correspondence, meeting notes, telephone records, operation evaluation sheets, pertaining to [] the evaluation, training, proposed changes, effectiveness of the Comprehensive Animal

Welfare Policy (CAWP) from November 2015 to the present." Ex. 1. BLM explained that the FOIA Request had been classified as falling within the Exceptional/Voluminous Track within its Multitrack Processing and thus would require more than sixty days to process.[1]

On March 9, 2020, Plaintiff inquired into BLM's progress on the FOIA Request and its request for BLM to provide an expected date for BLM's response. Ex. 2. Later that day, BLM personnel replied, explaining that BLM was "working with our subject matter experts to fulfill your request," and as requests were generally processed on a first-in, first-out basis within processing tracks, the FOIA Request was in the queue for processing behind almost 700 backlogged requests that BLM had received before it and which would generally be completed before BLM completed its processing of the FOIA Request. Ex. 2. The BLM personnel further indicated that BLM would process the FOIA Request and as the records became available, BLM would send them to the Plaintiff in interim releases upon review. *See id.* On March 9, 2020, Ryan Witt, BLM, Acting BLM Division Chief, circulated a Memorandum internally directing BLM staff to search for information responsive to the FOIA Request falling within the date range of November 2015 to March 9, 2020. Ex. 3.

On April 13, 2021, the Plaintiff inquired with BLM into the status of the FOIA Request and further confirmed her request for electronic conveyance and a fee waiver. Ex. 4. Thereafter, on December 4, 2023, BLM personnel emailed the Plaintiff requesting for the Plaintiff to confirm that she was still interested in having the FOIA Request processed. Ex. 5. The email correspondence continued explaining that BLM "is experiencing a backlog of FOIA requests that has impacted our ability to process your request" and emphasized BLM's commitment to providing responses and to "remedying the FOIA backlog." Ex. 5. That same day, the Plaintiff confirmed that she was still interested in the FOIA Request and further specified that she would like the scope of the request to also reach "a self-assessment tool that was put into effect in fall of 2015" and to have the request cover the time period of November of 2015 to September of 2020. Ex. 6. As of February 23, 2024, a BLM FOIA

---

[1] BLM explained that despite being processed on a first-in, first-out basis and being granted expedited processing, "because of the nature of your request and the circumstances surrounding this request, we will prioritize and process your request as the records become available." Ex. 1.

Specialist had conducted searches over the emails and shared drives of specified BLM personnel of the National Wild Horse & Burro Division (which was located in Oklahoma Field Office in Norman, OK) for records that were responsive to the FOIA Request. Ex. 15. The documents returned from these searches were believed to "constitute all documents within the possession or control of the staff in the office" that were responsive to the FOIA Request. Unfortunately, a preexisting, significant backlog prevented BLM from reviewing the returned records prior to 2025. Although responsive records to the FOIA Request were gathered in 2024 (and potentially earlier), BLM's FOIA office simply did not have the resources it required to review the records to confirm responsiveness and apply redactions until it completed its processing of the returned records in 2025.

Thus, on February 10, 2025, a representative from the Department of Interior's FOIA Support Team ("FST") notified Plaintiff that the team had been deployed to BLM to assist it with processing the backlog of FOIA requests in BLM's headquarters. Ex. 16. The FST personnel sought to confirm that responses to the FOIA Request were still being sought by the Plaintiff and further explained that "the BLM is experiencing a backlog of FOIA requests" that impacted its processing ability and reconfirmed that BLM was committed to providing responses and to remedying the FOIA backlog. *Id.*

On March 18, 2025, the Plaintiff filed the Complaint commencing this Action. ECF No. 1. On April 9, 2025, after conducting an adequate search for responsive records, BLM provided a full and final response to the FOIA Request consisting of a document production consisting of 307 pages with 103 pages withheld in full or in part under Exemption 5 of the FOIA ("April FOIA Production"). Ex. 7 (April 9, 2025, cover correspondence); ECF No. 34-1 (Decl. Ryan Witt). BLM's search for records in response to the FOIA Request was detailed by Witt to be reasonably calculated to uncover all responsive records, such that all files reasonably expected to contain responsive records were searched, whereby all non-exempt responsive records had been released to Plaintiff. ECF No. 34-1, ¶ 6. On June 18, 2025, the Plaintiff, through its counsel in the subject action, contacted counsel for BLM regarding the April FOIA Production indicating that the records did not include any

documents related to a status review of assessment of the CAWP Standards, a review of the CAWP self-assessment tool, or any of the other reviews or plan finalization documents that the Plaintiff had anticipated receiving in response to the FOIA Request. Plaintiff's counsel thus requested for BLM to confirm that it had no responsive documents falling within the foregoing categories. Ex. 8. On July 3, 2025, the Plaintiff filed the First Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint"), ECF No. 17, alleging that as of the date of its filing, BLM had not yet confirmed whether or not any responsive documents falling within Plaintiff's June 18, 2025, areas of inquiry existed. ECF No. 17, at ¶¶ 51-52.

Upon review of Plaintiff's June 18, 2025, inquiries, BLM located an additional 21 pages responsive to the FOIA Request, and on July 22, 2025, BLM then produced these responsive documents to Plaintiff ("July 2025 FOIA Supplemental Production"). Ex. 9.[2] On July 25, 2025, Plaintiff's counsel sent email correspondence to counsel for BLM indicating that no documents pertaining to a review of the CAWP standards and review of the self-assessment tool had been produced in the FOIA Productions and consequently, requested for the BLM to confirm that the FOIA Productions contained everything responsive to the FOIA Request. ECF No. 44, at pp. 5-7. In reply to Plaintiff's July 31, 2025 email following up on the foregoing inquiry, counsel for BLM confirmed that there "are no additional public records related to the internal assessment of the CAWP within the date range requested by" the Plaintiff in the FOIA Request since no such records existed, elaborating that during the time period of the FOIA Request, "BLM did not have the resources to conduct an assessment," which counsel continued was likely referenced in the emails produced within the FOIA Productions. ECF No. 44, at p. 4. On August 7, 2025, counsel for the Plaintiff identified that the FOIA Productions included documents from 2024 and hence, inquired into whether the FOIA Productions included responsive documents "up to and including 2024" or were limited to the dates of the FOIA Request. ECF No. 44, at p. 3. On August 8,

[2] Collectively, the April FOIA Production and the July 2025 FOIA Supplemental Production are referred to as the "FOIA Productions."

2025, counsel for BLM responded, explaining that the FOIA Productions were only complete through the date range specified in the FOIA Request. ECF No. 44, at pp. 2-3. Thereafter, on August 12, 2025, Plaintiff's counsel informed BLM's counsel that Plaintiff was satisfied that it could conclude the litigation, subject to its recovery of attorney's fees and costs. *See* ECF No. 44, at p. 2. Plaintiff's counsel explained that despite acknowledging that the FOIA Productions satisfied the FOIA Request such that the litigation could be concluded,

> [because her client] had to file suit to enforce, FOIA, she is entitled to recover her reasonable attorneys' fees and expenses. Is the DOJ open to negotiating a resolution of her attorneys' fee claim, or should we file a fee motion?
>
> To settle our claim for fees and costs, we'd accept a total payment of $20,000 for our attorney work and expenses. This covers my law firm's fees as well as Mr. Resh's. As you know, if we file a motion for fees and fully brief that motion, we will be able to recover attorneys' fees and expenses related to that work, which would increase our fee demand considerably. Right now, we are able to settle at what I believe is a very reasonable fee award.

ECF No. 44, at p. 2. Notably, no fee sheet was provided with the sum certain representing the total attorneys' fees and costs Plaintiff had incurred to date in this Action, nor did Plaintiff provide information on its hourly rates or hours expended.

Accordingly, on August 13, 2025, counsel for BLM requested Plaintiff's counsel remit the billing entries for the litigation so that it could be provided to BLM for consideration of Plaintiff's settlement offer. Ex. 10. In a reply on August 18, 2025, Plaintiff's counsel attached a summary sheet, which included "the rates and hours for each attorney or staff member, along with their position title and year of graduation" and further explained that "I won't be preparing a detailed fee sheet for such reasonable hours." Ex. 11. The summary sheet provided each attorney and staff member along with their respective billing rate and total hours billed. It also provided the total expenses for Greenfire Law and for Brent Resh Law, totaling approximately $16,776.16. *Id.* Meanwhile, no detailed billing entries, narratives, or expense breakdowns were included.

In response, on October 14, 2025, BLM's counsel provided Plaintiff with a counteroffer to settle the litigation noting as follows: "Keep in mind that to go much beyond

this settlement amount, that the BLM states it needs an itemized billing of your client's fees." Ex. 12. On October 23, 2025, Plaintiff first provided BLM's counsel with a detailed itemized billing statement, explaining "I truly do not believe you are entitled to this work product, but I'd like to move this along." Ex. 13. The detailed itemized billing statement included dated time entries with descriptions and the billing agent for each entry. *Id.* Upon BLM's review of the detailed billing statement, BLM found a series of entries to be objectionable in that they were duplicative, vague, excessive, constituted block billing, related to Plaintiff's counsel's pro hac vice application, and comprised internal, and administrative work that BLM maintained should have been classified as firm overhead. *See e.g.* J. Blome's 2/24/2025 entry ("Prepare new matter, assign task to draft representation); J. Blome's 2/25/2025 entry (Exchange emails with Laura Leigh to set up call to discuss status of various matters); D. Wallace's 3/12/2025, 03/13/2025, and 03/14/2025 entries ("Draft Civil Case Cover Sheet and Summonses as well as PHV Applications for RL and JB").

On January 12, 2026, BLM filed the Federal Defendants' Motion to Dismiss First Amendment [sic] Complaint for Declaratory and Injunctive Relief ("Motion to Dismiss"), ECF No. 34, seeking to dismiss the Amended Complaint. On January 26, 2026, the Plaintiff filed its Opposition to Federal Defendant's Motion to Dismiss First Amended Complaint for Declaratory and Injunctive Relief and Cross Motion for Summary Judgment ("12(b) Objection/SJ Motion"). ECF No. 36. On April 9, 2026, the BLM filed its Reply to the 12(b) Objection/SJ Motion ("Reply"). ECF No. 43. In the Motion to Dismiss and Reply, BLM argued that because it had produced all responsive, non-exempt records to the Plaintiff, the claims set forth in the Amended Complaint were moot as they failed to present a case or controversy whereby the Court lacked jurisdiction to proceed. BLM further argued that because the records sought by the Plaintiff were ultimately produced, the substance of the controversy disappeared as the production fulfilled the relief sought by the Plaintiff.

On June 17, 2026, the Court granted BLM's Motion to Dismiss, ECF No. 46. The Court held that the BLM had met its burden of demonstrating mootness showing that no effective relief can be granted on Plaintiff's FOIA claim, as the claim challenges the

production of agency records that had already been produced. ECF No. 46, p. 4 (lines 3-6) (citing ECF No. 34, at 4-6, ECF No. 43, at 2-5). The Court further found Plaintiff's argument that it remained entitled to declaratory relief despite BLM making the FOIA Productions challenging BLM's delay in making its productions in response to the FOIA Request to be unpersuasive. *See* ECF No. 46, p. 4 (citing ECF No. 36, at 6). The Court "agree[d] with [Federal] Defendant that, because the requested records have been produced, no further effective relief is available, and the case is now moot." ECF No. 46, p. 4 (lines 20-22). The Court thus dismissed Plaintiff's claims set forth in the Amended Complaint claims as moot and closing the case. ECF Nos. 46 & 47.

## II. ARGUMENT

In the Attorneys' Fees Motion, the Plaintiff seeks an award of attorneys' fees and costs pursuant to the FOIA, contending that Plaintiff's lawsuit successfully caused BLM to make the FOIA Productions after more than 4.5 years of delay. ECF No. 50, at p. 8 (lines 3-7). Plaintiff contends that "[h]ad BLM complied with Plaintiff's FOIA in a statutorily compliance and timely manner, this litigation would have been avoided." *Id.* at (lines 14-15). Plaintiff argues that it substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(ii)(II) because "BLM unilaterally and voluntarily changed its position by producing documents only after Plaintiff filed this lawsuit." ECF No. 50, at p. 13 (lines 21-23) (citing ECF No. 36-2, Ex. D (36-2). Plaintiff also asserted that the record reflects no "evidence that BLM *intended* to disclose records before Plaintiff filed its lawsuit." *Id.* at line 28 (emphasis in original).

Plaintiff is not eligible for attorneys' fees and costs because its lawsuit did not cause the release of records produced by BLM. If the Court determines that Plaintiff is eligible, BLM further maintains that the amount sought should be reduced since this FOIA case does not present novel or difficult questions, since the Plaintiff's ultimate success was very limited under 5 U.S.C. § 552(a)(4)(E), and as a consequence of the unreasonableness of various specifically identified billing entries. Therefore, the Court should deny the Attorneys' Fees Motion or, in the alternative, BLM seeks for the Court to exercise its discretion to reduce any award to account for Plaintiff's limited overall success and the expenditure of

unreasonable hours. To compute an appropriate award, BLM respectfully requests that the Court (i) limit compensable time to the only period during which Plaintiff could be eligible for fees—February 15, 2025 through August 12, 2025—which total billable entries is $11,100.00, and then subtract the specifically challenged entries identified in the record, Ex. 14 (totaling $535.00), therefrom; (ii) categorically exclude the entirety of the $16,955.00 of entries related to the Motion to Dismiss; and (iii) if the Court determines that the Plaintiff is entitled to fees on fees and/or settlement related fees, BLM asks the Court to apply at least a 65% reduction to the $20,890.00 of identified settlement-related entries and the "fees-on-fees" entries and apply the same percentage-based deduction to any other award.

*1. Eligibility*

FOIA allows courts to assess "reasonable attorney fees and other litigation costs" against the federal government when a plaintiff has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E). The FOIA attorney fee provision requires courts to engage in a two-step inquiry in assessing whether a party is able to recover attorneys' fees and costs: first, the court determines whether the plaintiff is eligible under the statute for an award of fees; and second, whether the court in its discretion finds the plaintiff entitled to an award of fees.[3] *See Church of Scientology of California v. U.S. Postal Service,* 700 F.2d 486, 489 (9th Cir. 1983).[4] A party is eligible for fees if it "substantially prevailed" in the litigation. *Id.* (quoting 5 U.S.C. § 552(a)(4)(E)). "Substantially prevailed" applied here means that a "complaint has obtained relief through [2] . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II). "A complainant is deemed 'eligible' for a fee award by satisfying either subsection." *Poulsen v. Dep't. of Defense*, 994 F.3d 1046, 1050 (9th Cir. 2021).

[3] *See also Hart v. United States HHS*, 676 F. Supp. 2d 846, 856 (D. Ariz. 2009)

[4] In *Church of Scientology*, the Ninth Circuit remanded to the district court to make factual findings regarding three factors which a court should consider in determining whether the plaintiff had substantially prevailed: (1) "when the documents were released," (2) "what actually triggered the documents' release," and (3) "whether [the plaintiff] was entitled to the documents at an earlier time." *Church of Scientology v. United States Postal Serv*., 700 F.2d 486, 92 (9th Cir. 1983).

Because the Court never ordered relief to Plaintiff, the Plaintiff must prove eligibility by satisfying the second subsection. 5 U.S.C. § 552(a)(4)(E)(ii)(II). Where a plaintiff obtains relief through a voluntary "change in position by the agency," the plaintiff must "present convincing evidence that the filing of the action had a substantial causative effect on the delivery of the information." *Cohodes v. United States DOJ*, Case No. 20-cv-04015-LB, 2025 U.S. Dist. LEXIS 40006, at *14-15, 2025 WL 572888 (N.D. Cal. Jan. 24, 2025) (citations omitted). A "plaintiff is deemed to have 'substantially prevailed' [] if the 'litigation substantially caused the requested records to be released.'" *ACLU v. United States Dep't of Homeland Sec.,* 810 F. Supp. 2d 267, 274 (D.C. Cir. 2011) (internal quotation marks omitted) (quoting *N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (quoting *Chesapeake Bay Found. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216, 304 U.S. App. D.C. 167 (D.C. Cir. 1993)). This second prong is also known as the catalyst theory. *See e.g. Poulsen v. DOD*, 994 F.3d 1046, 1052 (9th Cir. 2021); *First Amendment Coalition v. U.S. DOJ*, 878 F.3d 1119, 1126–27 (9th Cir. 2017).

In affirming its holding in *Church of Scientology*, the Ninth Circuit explicitly rejected the notion that the 2007 amendment to FOIA, which incorporated the catalyst theory into the definition of "substantially prevailed," eliminated the need to establish causation once a lawsuit has been initiated. *First Amendment Coalition*, 878 F.3d at 1128. Nevertheless, the Ninth Circuit has not yet made clear whether a showing of causation is always required under the catalyst theory. *See First Amendment Coalition*, 878 F.3d at 1128 (divided panel regarding causation); *Poulsen*, at 1051 n. 5.[5] Notwithstanding this gap, the Ninth Circuit has instructed for reviewing courts to consider the following three factors in determining whether the plaintiff had substantially prevailed: (1) "when the documents were released," (2) "what actually triggered the documents' release," and (3) "whether [the plaintiff] was

[5] *See also Cohodes v. United States DOJ*, 2025 U.S. Dist. LEXIS 40006, at *14-15 (citing *Castillo v. U.S. Customs & Border Prot.*, No. 23-cv-03310, 2024 WL 1182865, at *3 (N.D. Cal. Mar. 19, 2024) (discussing whether the Ninth Circuit resolved the causation issue in *First Amendment Coalition*); *S. California Pub. Radio v. United States Small Bus. Admin.*, No. 220CV06490ODWASX, 2021 WL 6752245, at *3 (C.D. Cal. Sept. 3, 2021).

entitled to the documents at an earlier time." *First Amendment Coalition*, 878 F.3d at 1129 (internal quotation marks omitted) (quoting *Church of Scientology*, 700 F.2d at 491).

Ninth Circuit precedent has also set guideposts for what does not suffice to demonstrate causation under the second subsection. The Ninth Circuit has elucidated that while it is true that "the mere fact that defendants have *voluntarily* released documents does not preclude an award of attorney's fees to the plaintiff," it is equally true that "the mere fact that information sought was not released until after the lawsuit was instituted is insufficient to establish that a complainant has 'substantially prevailed.'" *Church of Scientology*, 700 F.2d at 491–92 (citing with approval *Cox v. United States Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979), *overruled on other grounds by Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C. Cir. 1993)). Indeed, "the mere filing of the complaint and subsequent release of the documents is insufficient to establish causation." *ACLU v. U.S. Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). Instead, "[c]ourts must consider other factors, such as whether the agency made a good[-]faith effort to search out material and pass on whether it should be disclosed, whether the scope of request caused delay in disclosure, and whether the agency was burdened by other duties that delayed its response." *ACLU v. United States Dep't of Homeland Sec.,* 810 F. Supp. 2d at 274 (internal quotation marks omitted) (quoting *Frye v. EPA*, No. 90-3041, 1992 U.S. Dist. LEXIS 14332, at *2 (D.D.C. Aug. 31, 1992) (internal quotation marks omitted) (quoting *Weisberg*, 745 F.2d at 1496)).

The mere fact that records were released after a suit was filed, in and of itself, is insufficient to establish that Plaintiff substantially prevailed. *Church of Scientology,* 700 F.2d at 491 (citing *Cox,* 601 F.2d at 6). Ultimately, "the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016). As applied to the facts at bar, the Plaintiff has at most established temporal proximity between the FOIA Productions and the filing of the Complaint. BLM never suggested that it did not intend to comply with the FOIA Request and instead,

continued to reaffirm it would respond while identifying that the cause for the delay was on account of the BLM's FOIA backlog. *See e.g.,* Exs. 2, 5, and 16; *cf. Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 99-98 (D.C. Cir. 2020). Moreover, a mere delay between the filing of the FOIA request and the production of documents is generally not enough to overcome the agency's representations that it intended to process the request and never denied the request. *See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981) (quoting *Cox*, 601 F.2d at 6) (finding that causation does not inure when "'an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request'").

It is likewise appropriate for the district court to consider, *inter alia*, whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed and may also account for "the plethora of Freedom of Information Act cases pending before federal agencies at any given time, and the time-consuming nature of the search and decision process." *Cox*, 601 F.2d at 6 (citing *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 612 (D.C. Cir. 1976)).[6] A plaintiff cannot merely point to the agency's delay in responding to the request. *See Cox*, 601 F.2d at 6. However, evidence of a change may include, for example, when an agency took an earlier litigation position opposing disclosure but then changed its position. *See e.g., Am. Immigr. Council v. DHS*, 82 F. Supp. 3d 396, 403 (D.D.C. 2015) (finding a causal relationship where agency released significant number of responsive documents despite initially resisting disclosure by filing summary judgment motion); *see also Schlabach v. Internal Revenue Serv.*, No. CS-96-361-RHW, 1996 WL 887472, at *2–3 (E.D. Wash. Nov. 5, 1996) (citing the following as examples of cases where in determining whether a FOIA suit had a causative effect, courts considered the timing of the release of documents and the intensity of the preceding litigation: *Exner v. F.B.I.,* 443 F. Supp. 1349, 1353 (S.D. Cal. 1978)

[6] *Cf. Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) ("The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.")

(plaintiff entitled to award of attorney's fees and litigation costs where, *inter alia,* the government vigorously opposed plaintiff's requests at every stage); *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1365 (D.C. Cir. 1977) (causative effect found where, *inter alia,* the government produced requested information after eight years of tedious and hard-fought litigation)). Ultimately, "the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Conservation Force v. Jewell*, 160 F. Supp. at 206. Here, the causative standard is not satisfied.

Here, BLM did not vigorously oppose or resist responding to the FOIA Request. Instead, BLM placed the FOIA request in queue for processing, which took longer than anticipated due to an extensive request backlog, as well as continuing staffing challenges. *See e.g.,* Exs. 2, 5, and 16. That the FOIA Request was going to take longer to process than expected was communicated to Plaintiff along with the backlog of FOIA requests behind which it was situated. *Id.* Moreover, while it is true that BLM took several years to produce documents responsive to the FOIA Request, BLM had taken action on the FOIA Request prior to the filing of the Complaint by completing searches and compiling records for review. *See e.g.,* Exs. 3, 7, and 15. In contrast to Plaintiff's claims, BLM had conducted searches for responsive documents prior to the time that Plaintiff filed the Complaint. ECF No. 50, at p. 15 (lines 4-5). Indeed, responsive documents had been pulled from searches completed during at least early 2024. Nevertheless, the responsive documents located by the searches still required withholding review, which BLM simply did not have the resources to complete until 2025 when the responsive records were ultimately produced. Ex. 15; *see Mattson v. Federal Bureau of Investigation*, No. C 08-4331 VRW, 2010 WL 1461595, * 3, *5 (N.D. Cal., April 12, 2010) (finding delay in processing backlogged FOIA requests and release of some information after suit was filed insufficient to show that plaintiff was eligible for attorney's fees). Hence, once the withholding review was completed, responsive records were produced with twenty-one pages reflecting redactions and with eighty-two pages withheld in full under Exemption 5 of FOIA. Ex. 7.

In addition, while BLM processed the earlier FOIA requests in the order in which they were received, it continued to monitor Plaintiff's interest in the FOIA Request, which further indicates BLM did in fact intend to comply with the FOIA Request but was hampered in its ability to do so by external forces, whereby the requisite causation is lacking. *See e.g., Conservation Force v. Jewell*, 160 F. Supp. 3d at 206 (internal quotations and citations omitted) ("After all, if it was unavoidable delay accompanied by due diligence in the administrative process that caused the agency's failure to respond in a timely fashion to the initial FOIA request, and not the threat of an adverse court order, then it cannot be said that the complainant substantially prevailed in [its] suit."); *Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 107 (D.D.C. 2009) (reasoning that because the U.S. Army Corp of Engineers had already decided to release the requested records prior to the plaintiff's filing of this lawsuit, the suit was not the cause of the disclosure).

In summary, Plaintiff has only established that the information sought was not released until after the lawsuit was instituted, which, without more, is insufficient to establish that the Plaintiff has "substantially prevailed." Accordingly, Plaintiff is not eligible for attorneys' fees and costs.

## III. ATTORNEY FEES CALCULATION

### *1. Entitlement*

If the plaintiff demonstrates eligibility for fees by proving that it has "substantially prevailed," "the district court may, in the exercise of its discretion, determine that the [complainant] is *entitled* to an award of attorney's fees." *Long v. IRS*, 932 F.2d 1309, 1313–14 (9th Cir. 1991) (per curiam) (internal quotation marks omitted) (quoting *Church of Scientology*, 700 F.2d at 492) (emphasis in original). Hence, even if the plaintiff substantially prevails, and the t the plaintiff is eligible for fees, the plaintiff must still also prove entitlement to fees, and that the fees sought are reasonable and appropriate. BLM first turns to addressing entitlement followed by addressing the reasonableness of the attorneys' fees and costs sought in the Attorneys' Fees Motion.

Four factors inform the entitlement inquiry: "(1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." *Schoenberg v. FBI*, 2 F.4th 1270, 1275-1276 (9th Cir. 2021) (internal quotation marks omitted) (quoting *Hiken v. DOD*, 836 F.3d 1037, 1044 (9th Cir. 2016)). The Ninth Circuit applies a two-step test in reviewing a district court's finding of entitlement for award of attorney's fees under FOIA. First, it reviews the district court's analysis of each of the four individual factors for abuse of discretion, and second, it reviews the balancing of the four factors for abuse of discretion. *Schoenberg v. FBI*, 2 F.4th at 1276 (quoting *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018)) (per curiam). However, the foregoing entitlement factors are not exhaustive. The Court's next task is to determine an appropriate fee amount, based upon attorney time shown to have been reasonably expended. "[T]he court may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate." *Schoenberg v. FBI*, 2 F.4th at 1275-76 (internal quotation marks omitted) (quoting *Long v. IRS*, 932 F.2d at 1313).

In the event the Court finds that Plaintiff is eligible for attorneys' fees as a substantially prevailing party under 5 U.S.C. § 552(a)(4)(E)(ii), for the sake of narrowing the issues at bar and to streamline briefing, BLM generally does not contest entitlement under factors one through three nor that Plaintiff is entitled to attorneys' fees and costs. However, even if the Plaintiff proves eligibility for fees, and the court finds plaintiff entitled to fees, the fees sought must still be reasonable and appropriate to recover those fees. It is the reasonableness of the fees claimed that stand at the crux of BLM's entitlement objection.

***2. Reasonableness***

The "customary method" for awarding fees is the lodestar method, which is performed by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a "reasonable hourly rate." *Hiken v. DOD*, 836 F.3d at 1044 (internal quotation marks omitted) (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)). A court may revise upward or downward the resulting "lodestar figure" if "factors

relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Long v. IRS*, 932 F.2d at 1314; *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006).[7]

"The plaintiff who has proven both eligibility for and entitlement to fees must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long v. IRS*, 932 F.2d at 1313–14. A plaintiff's overall success on the merits also must be considered in determining the reasonableness of a fee award. *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 793 (1989)). The district court may nonetheless consider other factors in determining whether to adjust the fee award upward or downward. *Chalmers*, 796 F.2d at 1212.

The district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of litigation and the amount which would reasonably compensate the attorney. *Chalmers v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Harmon v. San Diego County*, 736 F.2d 1329, 1331 (9th Cir. 1984); *Pate v. Alameda-Contra Costa Transit District*, 697 F.2d 870, 872-73 (9th Cir. 1983)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Hall v. Bolger*, 768 F.2d 1148, 1151 (9th Cir. 1985) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

In determining whether a downward adjustment is warranted, the Plaintiff should only be awarded fees for time reasonably expended. *See Rosenfield v. U.S. DOJ*, 904 F. Supp. 2d 988, 1003-04 (N.D. Cal. 2012) (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 433) ("[A] court should exclude from a fee applicant's initial fee calculation hours that were not 'reasonably expended,' such as those incurred from overstaffing, or 'hours that are excessive, redundant, or otherwise unnecessary.'"). Likewise, the number of hours reasonably spent may be adjusted for time spent on unsuccessful claims. *See Hensley*, 461 U.S. at 436 (explaining that the most critical factor is the degree of success obtained, whereby

[7] *See also Lacy v. United States Dep't of State*, Case No. 8:22-cv-01065-DOC-KES, 2023 U.S. Dist. LEXIS 195381, *4–5 (C.D. Cal. Aug. 22, 2023).

if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount"); *see e.g., Schaeffer v. San Diego Yellow Cabs*, 462 F.2d 1002, 1008 (9th Cir. 1972) (explaining that "the amount of the award should also be proportionate to the extent to which the plaintiff prevails in the suit," whereby the Ninth Circuit elaborated that the district court should reconsider the award of attorney's fees in light of its decision that plaintiff is entitled to a small portion of the back pay claimed by her). [8]

If the Court finds that Plaintiff is eligible, BLM seeks for the Court to apply a downward adjustment by awarding Plaintiff attorneys' fees and expenses reasonably incurred only during the period from February 15, 2025, until BLM's productions were confirmed by Plaintiff to satisfy the FOIA Request. ECF No. 44, at p. 2. After identifying the relevant time period during which attorneys' fees could be awarded, BLM seeks for the Court to apply the lodestar method in assessing the reasonableness of the fees Plaintiff seeks and for the Court to make a downward adjustment based on the challenged entries identified below. In addition, BLM seeks for the Court to apply a percentage based downward adjustment for the fees sought by the Plaintiff on account of fees on fees and the settlement negotiations. The rationale for the relief sought is explored in greater detail below.

At the outset, BLM maintains that the majority of the hours claimed by the Plaintiff in the Attorneys' Fees Motion were not reasonably expended in light of the limited success of Plaintiff in this litigation, and therefore, are not recoverable. Given the extremely limited relief obtained by Plaintiff in this lawsuit, the recoverable portion of the Plaintiff's fee award should also be significantly reduced from what is claimed in the Attorneys' Fees Motion. *See e.g., Carter v. Veterans Admin.*, 780 F.2d 1479, 1482 (9th Cir. 1986) (finding that costs incurred before the case became moot are recoverable unless the district court discretionarily determined that an award of costs would be inappropriate).

[8] A plaintiff's overall success on the merits also must be considered in determining the reasonableness of a fee award. *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 793 (1989)).

To the extent Plaintiff achieved any success as a result of the lawsuit, that success ended with BLM's final response in the July 2025 FOIA Supplemental Production. As a result, the Plaintiff did not substantially prevail in its efforts beyond that point, and the additional hours the Plaintiff expended were generally not reasonable. Accordingly, the Court should reduce the award to reflect Plaintiff's success was limited to BLM's production of records—namely, the FOIA Productions. "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . [W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Yonemoto v. Dep't of Veterans Affairs*, 549 Fed. Appx. 627, 630 (9th Cir. 2013) (citing *Hensley*, 461 U.S. at 440). When calculating attorney fees, "hours . . . spent on any claim other than [a] successful [c]laim [are] not reasonable." *Or. Natural Desert Ass'n v. Locke*, Civil Case No. 05-210-KI, 2010 U.S. Dist. LEXIS 323 at * (D. Or. Jan. 5, 2010) ("The number of hours reasonably spent may be adjusted for time spent on unsuccessful claims.").

Moreover, Plaintiff was unsuccessful in its efforts defending against Motion to Dismiss. The Court granted the Motion to Dismiss, holding that Plaintiff's FOIA claim was mooted by the FOIA Productions. ECF No. 46, at p. 4 (lines 3-22); p. 5 (lines 3-5). Accordingly, because BLM substantially prevailed on the Motion to Dismiss, Plaintiff should not recover fees for any time spent briefing the Motion to Dismiss. These entries are highlighted in grey on the time sheet(s) and total 29.5 hours. BLM would respectfully request for these entries to be disallowed in full. Ex. 14.

No recovery should be permitted for these hours because Plaintiff did not substantially prevail. *See Bloomgarden v. United States DOJ*, 253 F. Supp. 3d 166, 179, 180 (D.D.C. 2017) (reasoning that the bulk of plaintiff's legal work was spent on issues on which plaintiff did not prevail and concluding that "Plaintiff did not prevail on any issue after the Court ordered the government to disclose any segregable portions of the documents . . . With the exception of work performed preparing plaintiff's fee petition, the Court therefore agrees with the government that plaintiff is not entitled to fees for legal work performed after

this date."); *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012) (emphasizing the importance of a plaintiff's overall success on the merits in determining the reasonableness of a fee reward and then reducing plaintiff's fee when plaintiff's fee itemization sought fees spanning the entire case up until dismissal, including improperly seeking to recover fees for preparing its "unsuccessful" summary judgment motion and reviewing DOJ's "largely successful" summary judgment motion).

More generally, Plaintiff achieved limited success in the case at bar, whereby a downward reduction of the overall amount sought is alternative relief the Court could exercise its discretion to impose. *See e.g. Leopold v. U.S. Secret Serv.*, no. 22-cv-1923, 2025 WL 2177912 at *1 (D.D.C. Aug. 1, 2025) (reducing fee award by 80% based on the narrow relief obtained); *Elec. Frontier Found. v. Dep't of Homeland Sec.*, No. C 12-5580 PJH, 2014 U.S. Dist. LEXIS 161670 at *17 (N.D. Cal. Nov. 18, 2014) ("Overall, the court finds that the vast majority of the relief obtained by plaintiff came in response to the filing of the complaint itself, and were unrelated to the subsequent proceedings. The court also notes that plaintiff prevailed on only a small portion of the arguments that it raised in its summary judgment motion. The court will thus downwardly adjust the amount requested by plaintiff, to account for the limited nature of plaintiff's success in this specific case, and the reasonableness of the hours expended subsequent to the filing of the complaint."); *Swan v. Carlstrom*, CV 24-128-M-DLC, 2026 U.S. Dist. LEXIS 49360 at *5 (D. Mont. March 10, 2026).

Plaintiff received the April FOIA Production approximately 22 days after filing the Complaint. Ex. 7. Plaintiff then filed the Amended Complaint and received BLM's supplemental production of records, the July 2025 FOIA Supplemental Production, 18 days later. Ex. 8. After this temporal event, the Plaintiff achieved no success. Accordingly, Plaintiff's billable entries incurred after August 12, 2025, should be disallowed with the exception of the settlement negotiations undertaken by the Plaintiff and the fees on fees matters, which should have a percentage reduction applied for the reasons discussed in greater detail below.

*<u>A. Administrative Tasks</u>*

A number of the entries on Plaintiff's time sheet represent purely administrative tasks for which no recovery is available. Reasonably expended time is generally time that "could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Plaintiff repeatedly billed for downloading filings, calendaring deadlines, and updating internal case management systems. *See e.g.* D. Wallace 3/20/2025 entry (.2: Download and docket judicial assignment and endorsed summons and calendar deadline to serve); N. de la Fuente 4/22/2025 entry (.3: Scan in USPS certified mail receipts, save to service folder and save cost receipts to SP and apply to matter in Clio). These purely administrative tasks should be absorbed within firm overhead instead of being charged to BLM. Entries falling within firm overhead are highlighted in dark blue, Ex. 14, totaling approximately 4.4 hours for the period between February 15, 2025 and August 12, 2025. BLM thus requests a downward adjustment on account of these entries of $90.00.[9]

| Date | Billing Agent | Challenged Entry | Hours times Billing Rate |
|---|---|---|---|
| **03/20/2025** | D. Wallace | Download and docket judicial assignment and endorsed summons and calendar deadline to serve | 0.2 * $200.00 = $40.00 |
| **04/22/2025** | N. de la Fuente | Scan in USPS certified mail receipts, save to service folder and save cost receipts to SP and apply to matter in Clio | 0.3 * $100.00 = $30.00 |
| **07/25/2025** | D. Wallace | Download and docket ORDER granting second extension of time to answer FAC | 0.1 * $200 = $20.00 |

**Total: $70.00**

---

[9] BLM has also included challenges to entries billed outside of the eligibility periods on these same grounds that are also highlighted in blue in the event the Court disagrees with BLM's measuring dates for Plaintiff's eligibility. *See* Ex. 14.

Likewise, the following entry also comprises firm overhead that should be excluded if the Court determines the eligibility period extends beyond August 12, 2025. *See e.g.,* D. Wallace 7/25/2025 entry (.1: Download, docket, and calendar second stip extending time to answer FAC); D. Wallace 7/25/2025 entry (.1: Download and docket ORDER granting second extension of time to answer FAC).

*C. Vague or Otherwise Unreasonable or Unnecessary Entries*

Additional reduction is also justified because the Plaintiff's timesheet includes vague, unnecessary, along with other unjustified entries. "Vague billing records 'make[] it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task.'" *Louise Trama Ctr., LLC v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-01128, 2023 U.S. Dist. LEXIS 85566 at *15-16 (D.D.C. May 16, 2023) (quoting *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989)). Generic, one-line entries "are inadequate to meet a fee applicant's heavy obligation to present well-documented claims." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004).

Plaintiff's timesheet contains a series of one-line entries without clear relation to the case at bar, which is important here when Plaintiff's timesheet indicates that counsel may have represented Plaintiff Laura Leigh in "various matters" or "cases" as well as "future and upcoming litigation." *See e.g.* J. Blome's entry 2/25/2025 (0.1: Exchange emails with Laura Leigh to set up call to discuss status of various matters, new matters). J. Blome's 2/25/2025 entry (0.1: Confer with Laura Leigh to update her on status of various cases, plan for future and upcoming litigation).

Plaintiff also appears to have inadvertently included ECF filing costs and expenses related to service of process and filing fees on an hourly basis instead of their appropriate posture as expenses, which BLM would request a downward adjustment on account of. *See e.g.* J. San Luis' 3/18/2025 entry (NV ECF filing fees for complaint, receipt no. ANVDC-7989329); N. de la Fuente's 4/24/2025 entry (USPS Cost of Service on four Defendants for sending via USPS Certified Mail with Return Receipt Requested).

Other entries appear unreasonable due to the possible inadvertent inclusion of duplicate entries in the billing sheets. For example, it appears that Plaintiff's counsel, Rae Lovko, mistakenly billed twice for the same activity on May 2, 2025. *See* R. Lovko's 5/02/2025 entries (Zoom meeting with JB and client LL). Entries falling within this category of challenges are highlighted in red, Ex. 14, totaling approximately 2.8 hours for the period between February 15, 2025 and August 12, 2025, and warrant a deduction of $465.00.

| **Date** | **Billing Agent** | **Challenged Entry** | **Hours times Billing Rate** |
|---|---|---|---|
| **02/25/2025** | J. Blome | Exchange emails with Laura Leigh to set up call to discuss status of various matters, new matters | 0.1 * $550.00 = $55.00 |
| **02/25/2025** | J. Blome | Confer with Laura Leigh to update her on status of various cases, plan for future and upcoming litigation | 0.1 * $550.00 = $55.00 |
| **03/18/2025** | J. San Luis | NV ECF filing fees for complaint, receipt no. ANVDC-7989329 | 1.0 * $200.00 = $200.00 |
| **04/24/2025** | N. de la Fuente | USPS Cost of Service on four Defendants for sending via USPS Certified Mail with Return Receipt Requested | 1.0 * 100.00 = 100.00 |
| **05/02/2025** | R. Lovko | Zoom meeting with JB and client LL | 0.1 * $550.00 = $55.00 |

**Total: $465.00**

BLM also highlights the following unnecessary entries falling past August 12, 2025. Plaintiff seeks a fees award for its 8/29/2025 email to DOJ regarding an accidental filing, which did not relate to the litigation nor further the litigation. *See* J. Blome's 8/29/2025 entry. While a mistake is regrettable, the Plaintiff, not BLM, should bear the costs of the error. Similarly, Plaintiff seeks recovery for "research[ing] Federal Rules of Appellate Procedure" and "update[ing] the calendar for the last day to file notice of appeal in the 9th circuit," when no appeal was ever filed, and therefore Plaintiff did not substantially prevail on that issue. *See* P. Johnson's entries from 6/18/2026. In the event the Court considers these fees in its award assessment, these entries should be excluded through a downward adjustment and are also highlighted in red. Ex. 14.

*D. Fees on Fees*

A court may bar fee recovery for "hours that are excessive, redundant, or otherwise unnecessary." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60 (D.D.C. 2013) (quoting *Hensley,* 461 U.S. at 434). In this same vein, fees on fees "must be reasonable, and not excessive." *Gatore v. U.S. Dep't of Homeland Security*, 286 F. Supp. 3d 25, 49 (D.D.C. 2017). The Supreme Court has emphasized that a prevailing party's request for attorney's fees should not result in a second major litigation. *Hensley*, 461 U.S. at 437. In *Am. Small Bus. League v. SBA*, the district court not only reduced plaintiff's fees to reflect the limits on plaintiff's success when plaintiff lost summary judgment but further reduced plaintiff's fees on fees by 30% because the original amount sought accounted for nearly 45% of the total fees sought, which "suggests an unreasonable amount of hours were expended in connection with the motion." 2023 U.S. Dist. LEXIS 246831 at *23, *35 (N.D. Cal. Jan. 18, 2023). Analogous to the facts at bar, the court noted the "[t]he unreasonable amount of time sought in this case is exacerbated by counsel's familiarity with attorneys' fees in FOIA matters, and the fact that the fee motion does not involve particularly complex or novel issues." *Id.* at *36.

Here, Plaintiff spent 45.7 or so hours on the fee motion and another 7.8 hours relating to settlement negotiations, which in light of Plaintiff's June 23, 2026 meet and conferral

correspondence and related time entries likely formed the basis of Plaintiff's fee motion, based upon a review of Plaintiff's timesheet. These entries alone account for over 35% of all hours sought in the Attorneys' Fees Motion and is appropriately the subject of a downward adjustment. *See Basin and Range Watch v. BLM*, 2018 U.S. Dist. LEXIS 245780 (D. Nev. 2018); *Colo. Wild Pub. Lands v. USFS*, 2025 U.S. Dist. LEXIS 162109 at *8, *11–12 (D.D.C. March 21, 2025) (agreeing that it was unreasonable to award the plaintiff fees for numerous motions that it lost and the full amount of fees for aspects of the case as to which it achieved only limited success and then also excluding fees for "unsuccessful efforts to reach settlement").

BLM further seeks a downward adjustment to the settlement related fees due to the neglect of counsel in not providing BLM with detailed billing entries at the beginning of fee negotiations. Plaintiff's first offer of settlement on August 12, 2025, did not include a detailed accounting of counsel's time. As the party seeking payment of attorney's fees and recovery of costs, the Plaintiff has the burden of documenting its hours and submitting evidence to support those hours. *See Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945-46 (9th Cir. 2007) ("The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours."); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Plaintiff did not provide a detailed itemized billing that accounted for counsel's time until October 23, 2025. Hence, this matter could have been moved towards good faith negotiations earlier than October 23, 2025, if Plaintiff's counsel had provided reasonably sufficient detail to justify the fees and expenses it sought.

| **Billing Agent** | **Total Hours** | **Total Charges** |
|---|---|---|
| Patrick Johnson | 3.6 | $720.00 |
| Nuria de la Fuente | 0.1 | $10.00 |
| Jessica San Luis | 0.5 | $100.00 |
| Lily Rivo | 46.0 | $16,100.00 |
| Rae Lovko | 1.7 | $935.00 |
| Jessica Blome | 5.5 | $3,025.00 |

**Total fees on fees and settlement related fees: $20,890.00**

Accordingly, BLM thus seeks for the Court to apply a downward adjustment to the fees on fees and settlement related negotiation entries of $20,890.00 by way of applying a percentage-based reduction of sixty-five percent (65%) thereto, which reflects fees commensurate with a generous estimate of the amount the Plaintiff prevailed in this litigation while also accounting for the role of the failed settlement negotiations in the Attorneys' Fees Motion. *See e.g. Leopold v. U.S. Secret Serv.*, 2025 WL 2177912 at *1; *Elec. Frontier Found. v. Dep't of Homeland Sec.*, 2014 U.S. Dist. LEXIS 161670 at *17; *Swan v. Carlstrom*, 2026 U.S. Dist. LEXIS 49360 at *5. In summary, a percentage-based downward reduction of 65% is appropriate to apply in this case to the categories of fees on fees and the failed settlement negotiations in light of Plaintiff's limited overall success and the inclusion of unreasonable and unnecessary hours in the Attorneys' Fees Motion.

*E. Excessive Billing for Duplicative Counsel*

In the event, the Court determines that the eligibility period extends beyond August 12, 2025, BLM underscores that the fees sought should also be disallowed due to the unreasonable use of multiple attorneys. When a plaintiff uses multiple attorneys when only one is necessary, "compensation should be denied for the excess time." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980); *see also Role Models Am. Inc., v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004). In the Attorneys' Fees Motion, Plaintiff provides no explanation as to why three experienced attorneys with significant administrative staff support were necessary to pursue a straightforward FOIA case that involved less than 500 pages of records and no summary judgment briefing. *See e.g., Reyes v. NARA*, 356 F. Supp. 3d 155, 170 (D.D.C. 2018); *ACLU Immigrants' Rights Projects v. U.S. Immigration and Customs Enf't*, 2018 U.S. Dist. LEXIS 9037 at *11–12 (N.D. Cal. Jan. 19, 2018) (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)) ("A district court may conclude that intra-office conferences between primary counsel and colleagues are unnecessary and duplicative when primary counsel has substantial experience and the plaintiff fails to 'provide a persuasive justification for the intra-office meetings.'"). Even if Plaintiff were able to recover for its unsuccessful efforts pursued using multiple attorneys, the amount currently sought is excessive. Likewise,

the use of multiple attorneys in a relatively simple FOIA case of this nature further supports the downward percentage-based adjustment sought to apply to any fee award.

In summary, if the Court finds the Plaintiff is eligible, BLM asks the court to reduce the total amount sought for billable entries using a downward adjustment allowing recovery only for the $11,100.00 of entries billed during the time period from February 15, 2025 through August 12, 2025 with a deduction of $535.00 for unreasonable entries billed for dates prior to August 12, 2025 for a maximum allowable recovery of $10,565.00. No matter the adjustment made, BLM further requests for the Court to make a wholesale deduction of all entries associated with the Motion to Dismiss of $16,955.00[10] since Plaintiff did not substantially prevail. Finally, if the Court determines that the Plaintiff is entitled to fees on fees and/or settlement related fees, BLM asks the Court to apply at least a 65% reduction to the $20,890.00 of Plaintiff's entries relating to fees on fees and settlement-related entries to account for Plaintiff's overall limited success and other unreasonable entries and as means to further ensure plaintiff is not receiving a windfall. BLM finally requests for the Court to apply the same percentage-based deduction to any other fees award.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Attorneys' Fees Motion because Plaintiff has failed to show that it is eligible for attorney's fees and costs. Alternatively, if the Court finds that Plaintiff is eligible, the Court should exercise its discretion to reduce the attorney's fees and costs sought in the Attorneys' Fees Motion and grant BLM such further and other relief as requested at the hearing or as the Court deems just and appropriate under the circumstances.

---

[10] The billing agent totals for the Motion to Dismiss related entries are as follows: Patrick Johnson = 4.1 hours = $820.00; Nuria de La Fuente = 0.2 hours = $20.00; Donna Wallace = 4.4 hours = $880.00; Rae Lovko = 21.9 hours = $12,045.00; Jessica Blome = 5.8 hours = $3,190.00

Respectfully submitted this 16th day of September 2026.

TODD BLANCHE
Attorney General
SIGAL CHATTAH
First Assistant United States Attorney

*/s/Marilyn E. Gartley*
MARILYN E. GARTLEY
Assistant United States Attorney
*Attorneys for the United States*